# Supreme Court Decisions.

## PAYMENTS BY INSOLVENT DEBTOR WITHIN THREE MONTHS OF ASSIGNMENT.

THE NATIONAL BANK OF COMMERCE ET AL V. GETTINGER.

Decided, May 19, 1903—68 Ohio State, p. 389.

*Creditor Receiving Payment from Debtor—While Debtor Insolvent—Can Not be Compelled to Surrender Such Payment—Sections 6343 and 6344, Revised Statutes—Laws of Insolvency and Preferences.*

A creditor who receives payment from his debtor while such debtor is insolvent, and makes such payment in contemplation of insolvency, or with a design to prefer such creditor to the exclusion of others. or with a design to hinder, delay or defraud creditors, can not be compelled to surrender such payment for the equal benefit of all creditors under Sections 6343 and 6344, Revised Statutes, even though an assignment made by such debtor be filed within ninety days after such payment.

Error to the Circuit Court of Lucas County.

On February 6, 1901, said Harris Gettinger filed his petition against The National Bank of Commerce, Arthur Klauser, Grant Benson, Charles B. Darling and Jay Benson, and afterward filed his amended petition as follows, omitting caption, signatures and verification:

"Plaintiff states that the defendant, The National Bank of Commerce, is a banking corporation organized under the laws of the United States and doing and carrying on a general banking business at No. 324 Madison street, in the city of Toledo, Lucas county, Ohio.

"Plaintiff further states that on January 14, 1901, he recovered a judgment against the defendant, Grant Benson, in the city and

justice courts of the city of Toledo and Port Lawrence township, Lucas county, Ohio, in the sum of one hundred twenty-three and 50-100 dollars ($123.50) and costs. That thereafter, to-wit, on January 17, 1901, transcript of said judgment was filed with the Clerk of Court of Common Pleas of Lucas County, Ohio, and execution was issued thereon to the Sheriff of Lucas County, Ohio. That said execution has been by said sheriff returned wholly unsatisfied.

"Plaintiff further states that on or about January 8, 1901, the defendant, Grant Benson, was indebted to his co-defendants herein, and other creditors, in a sum aggregating more than twenty-seven thousand dollars ($27,000) ; that on said date the defendant, Grant Benson, had no property of any name or nature subject to the payment of said indebtedness other than a stock of merchandise located at No. 310 Summit street, in the city of Toledo, Lucas county, Ohio, of the value of not more than fifteen thousand dollars ($15,000) ; that on or about January 8, 1901, said defendant, Grant Benson, obtained a loan of twelve thousand dollars ($12,-000), and to secure payment of same executed a chattel mortgage covering said stock of merchandise above referred to. That said stock of merchandise has now been sold and did not sell for enough to satisfy said mortgage indebtedness, and that Grant Benson now has no property of any nature to satisfy any portion of his indebtedness.

"Plaintiff further states that on or about January 8, 1901, the defendants, The National Bank of Commerce, Arthur Klauser, Charles B. Darling and Jay Benson, were creditors of the defendant, Grant Benson, and that on or about January 8, 1901, the said Grant Benson, in contemplation of insolvency, and with the intent and design to prefer said The National Bank of Commerce, Arthur Klauser, Charles B. Darling and Jay Benson to the exclusion in whole or in part of his other creditors, transferred and paid from said fund realized by execution of said chattel mortgage to said The National Bank of Commerce, the sum of five thousand dollars ($5,000) ; to Arthur Klauser the sum of five thousand dollars ($5,000) ; to Charles B. Darling the sum of fifteen hundred dollars ($1,500) ; and to Jay Benson the sum of five hundred dollars ($500). That said payments so made by the defendant, Grant Benson, to his co-defendants, The National Bank of Commerce, Arthur Klauser, Charles B. Darling and Jay Benson, were made in contemplation of insolvency and with the design to prefer said creditors to the exclusion in whole or in part of the other creditors of the said Grant Benson, and with the further design to hinder and delay his other creditors in the collection of their demands, and to defraud the other creditors of the said Grant Benson.

"Wherefore, your petitioner prays the court that said payments so made by the said Grant Benson to said The National Bank of Commerce, Arthur Klauser, Charles B. Darling and Jay Benson be declared void as to the creditors of the said Grant Benson, and that said transfers and payments so made be declared to be an assignment of all of the property of the said Grant Benson for the benefit of his creditors, and that said payments and transfers so made be declared to enure to the equal benefit of all of the creditors of the said Grant Benson, in proportion to the amount of their respective demands; that a trustee may be appointed to recover possession of said property and moneys so transferred and paid, and that the estate of the said Grant Benson be administered for the equal benefit of all of his creditors."

The defendants severally filed general demurrers to this amended petition, which were sustained by the court of common pleas, and the plaintiff not desiring to plead further, the petition was dismissed at costs of plaintiff.

The circuit court reversed the judgment and remanded the cause for further proceedings. Thereupon the cause was brought to this court on error.

*Harvey Scribner, Wilber A. Owen* and *Kohn & Northup,* for plaintiffs in error.

*Chittlenden & Chittenden,* for defendant in error.

BURKET, C. J.; SPEAR, DAVIS, SHAUCK, PRICE and CREW, JJ., concur.

This case and the case of *George L. Bobilya* v. *Oscar W. Priddy, Assignee,* were considered and decided together, and in the report of that case, at page 373 of this volume, will be found the holding of this court as to the constitutionality and proper construction of Section 6343, Revised Statutes, as amended April 26, 1898.

That section is as follows:

"Section 6343. Every sale, conveyance, transfer, mortgage or assignment, whether made in trust or otherwise, by a debtor or debtors, and every judgment suffered by him or them, and every act or device done or resorted to by him or them, in contemplation of insolvency, or with a design to prefer one or more creditors to the exclusion in whole or in part of others, and every sale, conveyance, transfer, mortgage or assignment made, or judgment suffered by a debtor or debtors, or procured by him or them to be made, in any manner, with intent to hinder, delay or defraud

creditors, shall be declared void as to creditors of such debtor or debtors, at the suit of any creditor or creditors, as hereinafter provided, and shall operate as an assignment and transfer of all the property and effects of such debtor or debtors, and shall inure to the equal benefit of all creditors of such debtor or debtors in proportion to the amoun' of their respective demands, including those which are unmatured. And every such sale, conveyance, transfer, mortgage or assignment made, and every such judgment suffered, and every such act or device done or resorted to, by any debtor or debtors, in the event of a deed of assignment being filed within ninety (90) days after the giving or doing of such thing or act, shall be conclusively deemed and held to be fraudulent, and held to be void as to the assignee of such debtor or debtors, where upon proof shown, such debtor or debtors was or were actually insolvent at the time of the giving or doing of such act or thing, whether he or they had knowledge of such insolvency or not.

"*Provided,* that nothing in this section contained, shall vitiate or affect any mortgage made in good faith to secure any debt or liability created simultaneously with such mortgage, if the same be filed for record in the county wherein the property is situated, or as otherwise provided by law, within three (3) days after its execution, and where, upon foreclosure or taking possession of such property, the mortgagee fully accounts for the proceeds of such property."

In the Bobilya case this court held that transferees who acted in good faith, and for fair value, must be protected, and that with that construction, the section is constitutional.

In the case at bar there is no averment in the amended petition that the defendants below acted in bad faith, or had notice of the insolvency of Grant Benson, or receive more money from him than he owed them, or that he made the said payments in contemplation of insolvency, or to create a preference, or to hinder, delay or defraud his creditors. The amended petition avers that Grant Benson made said payments to create a preference, to defraud his creditors, and in contemplation of insolvency; but there is no averment that the persons receiving said payments knew of his said intent and purposes, and, therefore, said petition, by its silence, concedes that they acted in good faith and without notice, in receiving said payments. It therefore follows, under the holding of this court in the Bobilya case, that they must be protected and can not be compelled to repay the money which they so received on honest claims.

There is another reason why these creditors can not be compelled to repay the money so received by them. Said Section 6343,

makes no provisions as to *payments* made in contemplation of insolvency, or to create a preference, or with intent to hinder, delay or defraud creditors. It is urged that payments are included and covered by the words "every act or device done or resorted to by him." This is not tenable. The word "payment" is as familiar, and as well understood, as the words, "sale, conveyance, transfer, mortgage or assignment," and if the General Assembly had intended to legislate against payments it would have used that word. The Legislature having omitted the word "payment" this court can not read it into the statute by construction; and especially is this true when we never had any legislation in this state against receiving payment of honest claims, and when such a construction would render the constitutionality of the act doubtful.

The circuit court erred in reversing the judgment, and its judgment of reversal will, therefore, be reversed, and that of the common pleas affirmed.

*Judgment reversed.*