## FLANAGAN et v SLONEKER

Ohio Appeals, 1st Dist, Butler Co

No 633. Decided March 9, 1935

John D. Andrews, Hamilton, for plaintiffs in error.

Harry S. Wonnell, Hamilton, for defendant in error.

## OPINION

By MATTHEWS, J.

The parties will be identified herein by their positions in the trial court.

The cause of action was based on §§60-A and 60-B of the National Bankruptcy Act, defining preferences and the elements making them voidable. The jurisdiction of the State court was invoked under favor of §60-B of that act.

By §§60-A and 60-B, aforesaid, it is enacted that:

"A. A person shall be deemed to have given a preference if, being insolvent, he has, within four months before the filing of the petition, or after the filing of the petition and before the adjudication, procured or suffered a judgment to be entered against himself in favor of any person, or made a transfer to any of his property, and the effect of the enforcement of such judgment or transfer will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class. Where the preference consists in a transfer, such period of four months shall not expire until four months after the date of the recording or registering of the transfer, if by law such recording or registering is required or permitted.

"B. If a bankrupt shall have procured or suffered a judgment to be entered against him in favor of any person or have made a transfer of any of his property, and, if, at the time of the transfer, or of the entry of the judgment, or of the recording or registering of the transfer if by law recording or registering thereof is required, and being within four months before the filing of the petition in bankruptcy or after the filing thereof and before the adjudication, the bankrupt be insolvent and the judgment or transfer then operates as a preference, and the person receiving it or to be benefitted thereby, or his agent acting therein, shall then have reasonable cause to believe that the enforcement of such judgment or transfer **would effect a preference**, it shall be voidable by the trustee and he may recover the property or its value from such person. And for the purpose of such recovery any court of bankruptcy, as hereinbefore defined, and any State court which would have had jurisdiction if bankruptcy had not intervened, shall have concurrent jurisdiction."

The defendants were accommodation endorsers upon a note of the bankrupts, owned by the Oxford National Bank for $1000.00. This was the renewal of a note given about eighteen months earlier. One week before the payment hereafter mentioned, the bankrupts executed and delivered to the defendants their note for $1000.00 secured by a mortgage upon real estate which was a third lien thereon. Admittedly this note and mortgage were given to

secure the defendants against loss on account of their liability as accommodation endorsers upon the note owned by the Oxford National Bank. While the rulings on the admissibility of the evidence were not consistent on this subject the witnesses—one of the bankrupts and the defendant Flanagan—both testified that when the original note of June 20th, 1931 was endorsed, the bankrupts agreed to secure the defendants against loss by giving them a second mortgage on certain real estate just as soon as they could pay an existing second mortgage of about $250.00 on the property and that this promise was repeated several times during the interval between that date and December 6th, 1932, and the excuse was given that they had been unable to discharge the second mortgage. On the last named date, the mortgage was given notwithstanding the existing second mortgage had not been paid because, as the bankrupt said, he had become ashamed to ask the defendants to sign the renewal note without doing something in the nature of a fulfillment of the promise. As a matter of fact, however, this transaction was not contemporaneous with a renewal of the note.

The bankrupts conducted a restaurant in the Village of Oxford. One of the defendants was a truck farmer nearby and the bankrupts were his most extensive customers. The other defendant operated a grocery store within a square of the bankrupts' restaurant and the bankrupts bought more groceries from him than any other one customer. They were continuously indebted to the grocer—defendant—in an amount fluctuating near $1000.00. All the circumstances indicate that the defendants had ample opportunity to know about the bankrupts' financial condition and every incentive of self-interest to avail themselves of the opportunity. The record shows there were many signs that the bankrupts knew that they were insolvent, as in fact they were at least from June 20th, 1931, when the original accommodation note was endorsed. Taking that method to raise money, giving an exorbitant discount for rent payable in advance, yielding to the requirement of the Oxford National Bank that the rents from the mortgaged property be paid to it to apply on interest—a virtual receivership—inability to spare $250.00 to pay a second mortgage to keep the promise given to the defendants, abandoning one room in which they had been accustomed to conduct the restaurant, dwindling patronage, and many other incidents were each and all signals of financial distress; and most of them were of a public nature, and all of them were known to the bankrupts and many of them must have been actually known to the defendants.

Eight days after—December 14th, 1932—the indemnity note and mortgage were given to the defendants, we find the bankrupts disposing of their real estate. They had been negotiating for some weeks for its sale, but had only agreed the night before upon terms. The property was mortgaged for $11,000.00 to the Oxford National Bank, and this second mortgage of about $250.00 to the Valley Mortgage Company, which the bankrupts had tried in vain for eighteen months to pay. In addition, they owed this unsecured note for $1000.00 to the Oxford National Bank upon which the defendants were endorsers. Not including these debts, they owed $6334.71, of which about $275.00 was in part secured and in part entitled to priority. All they owned, other than this real estate, were, the restaurant equipment, valued at $1500.00, and ledger accounts amounting to $611.45. To bind the bargain to pay $13,000.00, the purchaser paid $5.00, and on the next day the bankrupts and the purchaser met at the Bank to consummate the transfer. The record shows that the bankrupts acted under the directions of the others and received in cash from the selling price the sum of $174.92. The balance was distributed as follows:

$11,000.00—by payment or assumption of the Oxford National Bank mortgage.

$238.50—by payment of the second mortgage of the Valley Mortgage Company.

$1,009.50—paid to Oxford National Bank in extinguishment of the note endorsed by the defendants and also in extinguishment of the indemnity note and mortgage held by the defendants.

The balance was used in payment of taxes and adjusting the rent collected in advance by the bankrupts.

While the defendants did not participate in the meeting at the Bank on December 14th, 1932, other than to appear and sign a cancellation of the indemnity mortgage, there is evidence that they were represented throughout the meeting by the cashier of the Bank. It is apparent from the testimony of the cashier that almost as soon as the defendants received the indemnity note and mortgage they took them to him and told him they were "to be taken care of when and if the property was sold", and he told them he would attend to it. In less than a week the property was sold and

the transaction closed according to the intent of the parties.

Some point is made that the defendants were only endorsers and not creditors to whom the bankrupts owed a fixed amount unconditionally. But the bankrupts, as principal, and the defendants as secondary obligors were indebted to the Oxford National Bank, and the bankrupts were bound by operation of law from June 20th, 1931— the date of the original note—to indemnify the defendants. The defendants had a provable claim. They were creditors. • Had this transaction not been effected, the defendants would have been required to pay the Oxford National Bank the amount of the note, less the dividend from the bankrupts' estate. And by the consummation of the transaction, if undisturbed, they will be allowed to benefit to that extent beyond creditors of the same class.

That a surety or endorser is a creditor within the meaning of the National Bankruptcy Act is well settled.

And that a payment to the creditor in exoneration of the surety or endorser may be voidable preference recoverable from the surety or endorser is also well settled. Platt, Trustee v Ives, 45 L.R.A. (n.s.) 1068, and annotation; Cohen v Goldman, 250 Fed. 599; 2 Collier on Bankruptcy (3rd Ed.) 899, et seq.

There was evidence in proof of all the elements of a voidable preference. It is urged that the evidence does not prove that the defendants had reasonabl॰ cause to believe that the transfer would effect a preference. This element is necessarily an inference to be drawn usually from circumstantial evidence. We have referred to some of the evidence which we think sufficiently proves that the defendants actively participated in arranging for this payment knowing of facts and circumstances which would have caused a reasonable man to believe that a preference would be effected.

We find no substantial error in the record and the judgment is affirmed.

ROSS, PJ, and HAMILTON, J, concur.