Thomas A. CONROY, Trustee in Bankruptcy for Leslie D. Stickler, Bankrupt, Plaintiff-Appellee,

v.

Edgar I. SHOTT, Jr., Defendant-Appellant.

No. 16489.

United States Court of Appeals
Sixth Circuit.

July 8, 1966.

James G. Andrews, Jr., Cincinnati, Ohio, for appellant.

S. Arthur Spiegel, Cincinnati, Ohio, J. Vincent Aug, Cincinnati, Ohio, on brief, for appellee.

Before WEICK, Chief Judge, and PHILLIPS and EDWARDS, Circuit Judges.

PHILLIPS, Circuit Judge.

This is an appeal from the judgment of the district court which granted the

motion of plaintiff-appellee for summary judgment, overruled the motion of defendant-appellant for summary judgment, and entered judgment against defendant-appellant for $1,363,410.00 with interest and costs.

Plaintiff-appellee, Thomas A. Conroy, is the trustee in bankruptcy for Leslie D. Stickler, referred to herein as "bankrupt." The bankrupt inaugurated a scheme wherein he would borrow a sum of money from A, then borrow from B to repay A, borrow from C to repay B and so on. The inducement was a high rate of interest on a short term. This is referred to as a "Ponzi" type scheme. See Cunningham, Trustee of Ponzi v. Brown, 265 U.S. 1, 44 S.Ct. 424, 68 L.Ed. 873.

Defendant-appellant, Edgar I. Shott, Jr., referred to herein as "defendant," was a lender to the bankrupt. Both bankrupt and defendant were attorneys and had been friends since childhood. Millions of dollars were involved in the scheme and it appears that some 120 or more people made loans to the bankrupt in widely varying amounts, aggregating $3,309,462.05.

The trustee sued the defendant to recover a cumulative total of $1,343,410.00, representing some 600 transactions between the defendant and the bankrupt. The action was filed on March 20, 1963, more than two years after the January 18, 1961, adjudication of bankruptcy. The action is mantained under authority of 11 U.S.C. § 110(e) (1), (Section 70 (e) (1) of the Federal Bankruptcy Act.) [1]

The memorandum opinion and order of the district judge states that the defendant received $342,900 more from the bankrupt than he loaned. The district judge concluded if the "repayments" to

defendant were void or voidable under Ohio statutes, it must be under the provisions of Sections 1335.02, 1313.56 and 1313.57 of the Ohio Revised Code.

Section 1335.02 provided: [2]

"Every gift, grant, or conveyance of lands, tenements, hereditaments, rents, goods, or chattels, * * * made or obtained with intent to defraud creditors of their just and lawful debts or damages, or to defraud or to deceive the persons purchasing such lands, tenements, hereditaments, rents, goods, or chattels, is void."

The second of these statutes (O.R.C. § 1313.56) provides for voidability where there has been an intent to establish preference among or to defraud creditors. The third (O.R.C. § 1313.57) limits the application of the preceding section to situations where the transferee "knew of such fraudulent intent on the part of such debtor."

Defendant contends that § 1335.02 does not apply because it is directed only toward gifts; and that Sections 1313.56 and 1313.57 would not apply in the absence of knowledge on the part of the defendant of the fraudulent intent of the bankrupt and that such knowledge is not established in the present case.

On this question, the district judge said:

"In determining the applicability of the Ohio statutes, it becomes necessary to make an examination of several questions evolving about the knowledge and intention of the defendant in engaging in the subject transactions, and a parallel inquiry into Stickler's intentions is also pertinent. These questions may fairly be set forth as three statements of issues:

"(1) Did defendant have actual knowledge of Stickler's intent?

1. 11 U.S.C. § 110(e) (1): "A transfer made or suffered or obligation incurred by a debtor adjudged a bankrupt under this title which, under any Federal or State law applicable thereto, is fraudulent as against or voidable for any other reason by any creditor of the debtor, having a

claim provable under this title, shall be null and void as against the trustee of such debtor."

2. This section was repealed October 23, 1961. It and other statutes are cited herein in the form in which they existed at the times material hereto.

"(2) If defendant did not have such actual knowledge, should he have had knowledge of Stickler's intent?

"(3) Is either actual or constructive knowledge on the part of defendant of Stickler's intent a prerequisite to recovery?

"It will be immediately noted that an intent to defraud on the part of Stickler must first be presumed to have existed, but a quick review of the facts clearly establish that no doubt as to such intent can exist. Stickler's scheme was the essence of simplicity, not to say of stupidity. At its inception he borrowed from A, then borrowed from B to repay A. The inducement to B was a high rate of interest on a short term, whereupon it became necessary to borrow from C to repay B. This operation continued, with ever increasing rates of interest and shortening of the loan periods until hundreds of transactions involving millions of dollars had been entered into by Stickler. However, since he was insolvent from the moment of the making of the first loan, and since there has never been a suggestion that any source of income existed except new loans (if such may be considered 'a source of income'), the question of intent to defraud is not debatable.

"In making this determination, we are not unmindful of defendant's argument that from the facts 'the opposite conclusion would seem indicated.' Pursuing this argument, defendant states, 'Apparently, Stickler got into financial difficulty and, like the check-kiting scheme employed by many, borrowed against the income he expected from his law practice.' It would not seem to overstretch the doctrine of judicial notice to observe that a lawyer may not reasonably expect to repay loans extending into the millions 'from his law practice,' and the further argument based on the fact that Stickler made no attempt to flee when the scheme collapsed is similarly unimpressive. Parker v. Clary, 106 Ohio App. 295, 154 N.E.2d 641 (1958) and Damarin & Co. v. Huron Iron Co., et al., 47 Ohio St. 581, 26 N.E. 37 (1890), cited by defendant, are distinguishable on their facts.

"Passing, then, to a consideration of the three issues above enumerated, evidence is found which would support an affirmative answer to either of the first two. For obvious reasons, however, evidence of actual knowledge of Stickler's fraudulent scheme on the part of defendant is not overwhelming. This cannot be said of the evidence as to what he should have known. Defendant's loans to Stickler began in 1956 and extended into 1961. Over 600 transactions were entered into between the two, involving, as stated earlier, loans by defendant to Stickler in excess of $1,000,000, with exorbitant 'profits' to the lender. In some instances Stickler repaid loans by the simple expedient of endorsing to defendant the checks of other lenders, from which defendant clearly knew or should have known of the advances of at least the makers of such checks.

"While a minimum of reliance has been placed on this test, in considering Shott's actual or constructive knowledge it is proper to take into account his business and professional background as it appears in the record. A thumbnail view of that background is indicated by the fact that checks in the transactions involved variously came from or went into bank accounts maintained by the defendant in the names of 'Edgar I. Shott, Jr.,' 'Edgar I. Shott, Jr., Attorney,' and 'Shott Investment Company.' It thus clearly appears that defendant was no ordinary layman, ignorant of professional and financial affairs, and the proper test becomes what a reasonably prudent attorney with a special knowledge of investment matters knew or should have known concerning the financial structure and operation of an individual to whom in hundreds of transactions he advanced sums in excess of $1,000,000.

"Even viewed under this test, in spite of our conviction that defendant actually knew of Stickler's intent, it is possible that plaintiff has not known there is no genuine issue of any material fact on that issue within the meaning of Rule 56(c), Federal Rules of Civil Procedure. Such deficiency in the evidence does not exist as to constructive knowledge, however, and the record fully supports the conclusion that defendant should have had knowledge of Stickler's fraudulent scheme.

\* \* \* \* \* \*

"It is further concluded that the third issue should also be resolved affirmatively to the plaintiff. However, in view of the determination made with respect to the issue of constructive knowledge it becomes unnecessary to treat further with the third question, or to consider the unjust enrichment theory debated by counsel."

Defendant further relies upon National Bank of Commerce v. Gettinger, 68 Ohio St. 389, 67 N.E. 739.

We agree with the following distinction of this case made by the district court:

"Defendant argues that even if Stickler intended to defraud other creditors in making payments to defendant, plaintiff is precluded from recovery under the construction given O.R.C. § 1313.56 (then R.S. § 6343) by the Supreme Court of Ohio in the venerable case of National Bank of Commerce v. Gettinger, 68 Ohio St. 389, 67 N.E. 739 (1903). While the syllabus would seem to give some support to defendant's position, the opinion underscores a difference in factual pattern in the following language:

'In the case at bar there is no averment in the amended petition that the defendants below acted in bad faith, or had notice of the insolvency of [the debtor], or received more money from him than he owed them, or that they knew that he had made the said payments in contemplation of insolvency, or to create a prefer-

ence, or to hinder, delay or defraud his creditors \* \* \* [T]here is no affirmant that the persons receiving said payments knew of his said intent and purposes, and, therefore, said petition by its silence, concedes that they acted in good faith, and without notice, in receiving said payments.'

Having concluded that at the very least defendant should have known Stickler's fraudulent intent, the lack of application of Gettinger is readily apparent. Further reading of the opinion demonstrates that the Ohio Supreme Court intended that one receiving preferential payment was to be given protection only if he acted 'in good faith,' on the basis of 'for fair value' and received 'payment of honest claims,' none of which elements is here present."

See also National Finance Co. v. Marlow, Trustee, 343 F.2d 125 (C.A.6).

Upon the basis of the above quoted language from the opinion of the district court, we conclude that defendant is charged with constructive knowledge of the fraudulent intent of the bankrupt under facts which are not disputed and that the district court was correct in granting plaintiff's motion for summary judgment on the legal issue of liability.

Under the present state of the record, however, we hold that the district court was in error in entering summary judgment for $1,363,410.00.

The pre-trial order contains the following language:

"Counsel agree on the desirability of a determination on the *issue of liability* prior to submission of evidence on the issue of damages. Plaintiff will file a motion for summary judgment on the liability issue supported by stipulations to the extent possible and supplemented if necessary by affidavit(s). If felt necessary to fully present the liability issue, defendant will thereafter file a cross-motion for summary judgment." (Emphasis supplied.)

Plaintiff's motion for summary judgment was limited to "the question of liability" and did not seek a judgment for a specific amount of damages.

The pleadings, affidavits and other documents on file fail to establish that there is "no genuine issue as to any material fact" with respect to the amount of the judgment to which the trustee is entitled against defendant. Rule 56 (c), Federal Rules of Civil Procedure.

The record discloses 600 or more transactions between defendant and the bankrupt, which presumably involved many loans, credits and repayments. The record does not demonstrate to our satisfaction that the cumulative total of $1,363,410 is the correct basis for judgment.

The judgment of the district court is vacated and the case is remanded for a redetermination of the amount of the judgment.