**In re ROBERDS, INC., Debtor.**

**Roberds, Inc., Plaintiff,**

v.

**Broyhill Furniture, Defendant.**

**Bankruptcy No. 03–30194.**
**Adversary No. 01–3408.**

United States Bankruptcy Court,
S.D. Ohio,
Western Division.

Aug. 13, 2004.

Nick V. Cavalieri, Bailey Cavalieri, Columbus, OH, Robert B. Berner, Dayton, OH, for Debtor.

Walter Reynolds, Dayton, OH, Jerome J. Metz, Jr., Cincinnati, OH, for Broyhill Furniture.

Robert G. Hanseman, Sebaly Shillito & Dyer, Dayton, OH, for the Unsecured Creditors Committee.

## DECISION ON ORDER GRANTING BROYHILL FURNITURE SUMMARY JUDGMENT ON COUNT II OF THE COMPLAINT OF ROBERDS, INC.

THOMAS F. WALDRON, Chief Judge.

### Introduction

Roberds, Inc. (Roberds), the Debtor and Debtor in Possession, in this chapter 11 case has filed over 250 adversary proceedings attempting to recover transfers which are allegedly preferential under provisions of either the Bankruptcy Code, a separate Ohio statute, or both. This decision focuses on Roberds' pursuit of preferences under Ohio law and is, accordingly, restricted to applicable Ohio law. See generally Thomas D. Buckley, *The Use of Ohio's Preference Law in Bankruptcy: An Alternative to Section 547 With a Longer "Reach–Back" Period*, 20 Cap. U.L. Rev. 863, 863, fn. 1 (1991) (The author noting that only Kentucky, New Mexico and Maryland have separate state preference statutes of general application.) An extended

analysis of Ohio preference law has not been the subject of any previously reported bankruptcy court decision.

## Procedural History

Roberds' complaint (Doc. 1) seeks to avoid and recover thirty-two payments totaling $2,797,806.71 made during the ninety days prior to the bankruptcy filing date from the Defendant, Broyhill Furniture (Broyhill). Roberds asserts causes of action under 11 U.S.C. § 547(b) and, more specifically for this decision, Count II seeks avoidance of transfers pursuant to Ohio Revised Code §§ 1313.56 and 1313.57 "or other applicable law." Broyhill answered with a frequently seen combination of denials and affirmative defenses. (Doc. 7) Following the completion of extensive discovery, trial of this adversary proceeding is scheduled to commence on August 30, 2004.

In a July 14, 2004 required filing, captioned *Broyhill Furniture's List of Defenses Remaining For Determination In This Adversary Proceeding* (Doc. 46), and in a pre-trial conference held on July 16, 2004, Broyhill raised the issue of whether Roberds could, as a matter of Ohio law, recover payments as preferential transfers if Roberds made those payments to Broyhill in money, asserting that, under applicable Ohio law, a payment in money could not, as a matter of law, constitute a preference. After a clarification of the legal issue at a pretrial on July 22, 2004, the parties filed legal memoranda based on their agreements as to both the legal issue and an appropriate briefing schedule. (See Doc. 53—Paragraph 7)

## Arguments Of The Parties

The parties' positions are set forth in their filed memoranda. On July 23, 2004, Broyhill filed Broyhill Furniture's Motion for Partial Summary Judgment (Doc. 55) and Roberds filed Plaintiff's Memorandum of Law Concerning The State Law Issue. (Doc. 56) On July 30, 2004, the parties filed Reply Memorandum of Law Concerning The State Law Issue By Plaintiff Roberds, Inc. (Doc. 62) and Broyhill Furniture's Reply In Support of Motion For Partial Summary Judgment. (Doc. 63) The court acknowledges the extensive presentations by counsel in their memoranda.

Broyhill argues that a Supreme Court of Ohio decision—ruling an intentional preference cannot be recovered if the payment was in money—was a binding syllabus holding, which interpreted a prior Ohio Preference Statute and still controls any interpretation of the current Ohio Preference Statute, since the current statute remains unchanged in its relevant text; and, as a federal court, this bankruptcy court is bound by that holding and must conclude that, in the circumstances of this adversary proceeding, any intentional preference payments by Roberds to Broyhill cannot be recovered under applicable Ohio law, since they were payments in money. Further, although there may appear to be Ohio appellate and Sixth Circuit decisions which are inconsistent with, or contradict, the Supreme Court of Ohio's holding, a careful examination of these decisions demonstrates they are factually inapposite or fail to support the propositions for which they are asserted.

Roberds argues that a Supreme Court of Ohio decision—ruling an intentional preference cannot be recovered if the payment was in money—was expressed as dicta, and even if this court is restricted in reviewing state law, this court is not bound to follow a one hundred year old decision, which obviously did not consider the current Ohio Preference Statute and subsequent developments in Ohio preference law; and, in the circumstances of this adversary proceeding, any intentional prefer-

ence payments by Roberds to Broyhill can be recovered under applicable Ohio law, even though they were in money. Further, subsequent applicable decisions by Ohio appellate courts and the Sixth Circuit have demonstrated that the Supreme Court of Ohio's decision would not prevent recovery, under current Ohio law, of preference payments in money.

### Issue

As agreed to at the most recent pretrial conference (See Doc. 53—Paragraph 7), the issue to be determined is whether Ohio law would, upon presentation of sufficient evidence, authorize Roberds, Inc., an operating company, to recover as a preference its payment in money of a lawful debt to Broyhill Furniture. For purposes of this decision, Roberds is acknowledged to have been an operating company at the time of the payments and the debt paid to Broyhill was lawful. The only issue addressed in this decision is, since Roberds' payments to Broyhill were in money, can they be recovered as a preference under current Ohio law.

### Determination of Issue

The court determines that an intentional payment by an operating company in money of a lawful debt to a creditor cannot be recovered as a preferential transfer under current Ohio law and, accordingly, Broyhill's Motion for Partial Summary Judgment (Doc. 55) is granted, dismissing Count II of Roberds' Complaint, which seeks avoidance of transfers pursuant to Ohio Revised Code §§ 1313.56 and 1313.57 "or other applicable law."

### Discussion

#### Summary Judgment Standard

The familiar standard to address the parties' filings is contained in Federal Rule of Civil Procedure 56(c) and is applicable to bankruptcy adversary proceedings by incorporation in Bankruptcy Rule 7056. Federal Rule of Civil Procedure 56(c) states, in part, that a court must grant summary judgment to the moving party if:

the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

In order to prevail, the moving party, if bearing the burden of persuasion at trial, must establish all elements of its claim. *Celotex Corp. v. Catrett,* 477 U.S. 317, 331, 106 S.Ct. 2548, 2556, 91 L.Ed.2d 265 (1986). If the burden is on the non-moving party at trial, the movant must: 1) submit affirmative evidence that negates an essential element of the nonmoving party's claim; or 2) demonstrate to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim. *Id.* at 331–332, 106 S.Ct. at 2557. Thereafter, the opposing party "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (citations omitted); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–251, 106 S.Ct. 2505, 2510–12, 91 L.Ed.2d 202 (1986). All inferences drawn from the underlying facts must be viewed in a light most favorable to the party opposing the motion. *Matsushita,* 475 U.S. at 586–588, 106 S.Ct. at 1356–57. The parties agree, and the court determines, the issue presented is appropriate for resolution as a matter of law based on the parties' filings.

#### Federal Courts and The Interpretation of State Law

■ As a predicate to the court's analysis, it is important to note the restricted

relationship a federal court has in applying a state statute when that statute has been the subject of interpretation and application by the state's highest court. This issue is not a new one for the federal courts and predates the landmark decision of *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), which required federal courts to apply the state substantive law of the forum in which the federal court sits. See Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure*, § 4507 (2d ed. 2004) ("It was a problem in the era of *Swift v. Tyson*[, 41 U.S. 1, 10 L.Ed. 865 (1842)] as well, when federal courts, although free to disregard state court decisions on many subjects, nonetheless were required to follow state constitutions, statutes and decisions construing them . . . .")

Cases decided subsequent to *Erie* emphasize a federal court's obligation to follow an interpretation of a state statute by the highest court of a state. See, e.g., *Fleischman Constr. Co. v. Burns*, 284 F. 358, 360 (6th Cir.1922) ("The federal courts will not review or reverse the judgment of a state court of last resort construing a state statute, but will accept such construction, whether right or wrong, if no federal question is involved, and the decision of the state court is without purpose to evade a federal issue."); *Burns Mortgage v. Fried*, 292 U.S. 487, 493–94, 54 S.Ct. 813, 814, 78 L.Ed. 1380 (1934) ("The applicable state statute furnishes the rule of decision for a federal court sitting in the state or outside its borders. And in that court the law must be given the meaning and effect attributed to it by the highest court of the state, as if the state court's decision were literally incorporated into the enactment, whatever the federal tribunal's opinion of the correctness of the state court's views." (footnotes omitted)); *Minnesota ex rel. Pearson v. Probate Ct. of Ramsey County,*

*Minnesota,* 309 U.S. 270, 273, 60 S.Ct. 523, 525, 84 L.Ed. 744 (1940) ("For the purpose of deciding the constitutional questions appellant raises we must take the statute as though it read precisely as the highest court of the State has interpreted it.").

■ A complete analysis of the role of a federal court in applying state law recognizes that, where there is not a specific decision of the highest court of a state on the issues presented, a federal court is permitted to "determine issues of state law as it believes the highest court of the state would determine them, not necessarily (although usually this will be the case) as they have been decided by other state courts in the past." Wright, Miller and Cooper, § 4507. This exception is extremely limited:

The best evidence of how the forum state's highest court would determine an issue of state law pending before a federal court obviously are the relevant holdings of that court. Even if, in the considered judgment of the federal court or that of the courts of other states, the rule of law that was announced by the forum state's highest court is anomalous, antiquated, or simply unwise, it must be followed by the federal court nonetheless, unless there are very persuasive grounds for believing that the state's highest court no longer would adhere to the previously announced principle. Examples of exceptional circumstances in which a federal court might be justified in disregarding a state high court decision are when the state court itself has ignored the decision in later cases but without expressly overruling it, when a recent dictum from that court discredits an outdated holding, or when the state legislature has spoken since the decision in question in an apparent effort to change the principle of law declared in that decision.

*Id.* (footnotes omitted). The Sixth Circuit has expressed the same position, noting "[w]here a state's highest court has spoken to an issue, we are bound by that decision unless we are convinced that the high court would overrule it if confronted with facts similar to those before us." *Kirk v. Hanes Corp. of North Carolina,* 16 F.3d 705, 707 (6th Cir.1994).

■ Of course, no such action may be taken by a federal court (even under this limited exception) when the highest court of a state has interpreted a state statute. In such an instance, the federal court must defer to the precedent of a state's highest court. As stated by the United States Supreme Court in unambiguous language: "Neither this Court nor any other federal tribunal has any authority to place a construction on a state statute different from the one rendered by the highest court of the State." *Johnson v. Fankell,* 520 U.S. 911, 916, 117 S.Ct. 1800, 1804, 138 L.Ed.2d 108 (1997); Accord *City of Chicago v. Morales,* 527 U.S. 41, 68–69, 119 S.Ct. 1849, 1865, 144 L.Ed.2d 67 (1999). See also *Talley v. State Farm Fire and Cas. Co.,* 223 F.3d 323, 326 (6th Cir.2000), *citing Bailey Farms, Inc. v. NOR–AM Chemical Co.,* 27 F.3d 188, 191 (6th Cir.1994) (District court required to apply state law by following a controlling ruling of the highest court of the state.)

### The Supreme Court of Ohio Has Held a Payment Of Money Is Not a Preference Under Ohio Law

■ Although this court will set forth a more complete analysis of the issue presented, a brief summary of the outcome determinative factors may be helpful. At common law and in early preference statutes beginning in 1835 in Ohio (with certain exceptions not relevant to this decision), it was lawful for a debtor to pay one creditor in preference to another, even if the debtor was, or thereafter became, insolvent and unable to pay other creditors. See generally Buckley, 20 CAP. U.L. REV. at 868–73. The Ohio General Assembly enacted a statute in 1898 (the same year as the enactment of the Federal Bankruptcy Act), which, *inter alia,* authorized the recovery of certain preferential transfers; however, in 1903, when the Supreme Court of Ohio considered the statute, *the Supreme Court of Ohio held that the language enacted by the Ohio General Assembly was not intended to allow recovery of any such preferential transfer if the payment was in money.*[1] *Nat'l Bank of Commerce v. Gettinger,* 68 Ohio St. 389, 67 N.E. 739 (1903), syllabus. Since those dates, the Supreme Court of Ohio has never overruled its holding and the Ohio General Assembly, despite multiple reenactments of the statute, has never altered the relevant language. Buckley, 20 CAP. U.L. REV. at 884.

Although it is a correct statement that the Supreme Court of Ohio has not considered the text of the current Ohio Preference Statute, it is not a complete statement in the context of this issue, since the relevant language previously considered by the Supreme Court of Ohio remains unaltered in any significant aspect in the current statute.

In *Gettinger,* the Supreme Court of Ohio, in the syllabus, held:

A creditor who receives payment from his debtor while such debtor is insolvent,

---

1. It is notable that at the time of the Ohio Supreme Court's decision (1903), the United States Supreme Court had already rendered the decision in *Pirie v. Chicago Title & Trust Co.,* 182 U.S. 438, 21 S.Ct. 906, 45 L.Ed. 1171 (1901) finding that recovery of a payment in money was authorized under the federal preference statute, Section 60 of the Bankruptcy Act of 1898.

738

and makes such payment in contemplation of insolvency, or with a design to prefer such creditor to the exclusion of others, or with a design to hinder, delay, or defraud creditors, cannot be compelled to surrender such payment for the equal benefit of all creditors, under sections 6343, 6344, Rev. St., even though an assignment made by such debtor be filed within 90 days after such payment.

Roberds has characterized the *Gettinger* decision concerning the payment in money as dicta. This characterization is not consistent with the language of the syllabus. As a 1903 decision of the Supreme Court of Ohio, the syllabus is the holding of this case. See *Ohio ex rel. Heck v. Kessler,* 72 Ohio St.3d 98, 102–03, 647 N.E.2d 792, 797 (1995) ("It is axiomatic that the syllabus of an opinion issued by the Supreme Court of Ohio states the law of the case, and, as such, all lower courts in this state are bound to adhere to the principles set herein.") Although the issue of payment in money was an alternative basis for the court's decision, the rule of Ohio law was that a syllabus of a Supreme Court of Ohio decision—which, in *Gettinger,* directly and unequivocally declared an intentional preference cannot be recovered if the payment was in money—was the holding of the case.[2]

The Supreme Court of Ohio's *Gettinger* decision clearly held a payment in money cannot be a preferential transfer under the relevant language of former Section 6343 of the Ohio Code. This court must follow that holding unless the Supreme Court of

Ohio issued a subsequent ruling overruling or modifying *Gettinger.* See *Johnson,* 520 U.S. at 916, 117 S.Ct. at 1804. Neither party asserts *Gettinger* has been overruled or modified by the Supreme Court of Ohio.

It is further worthy of note that when the Supreme Court of Ohio had the *Gettinger* holding as precedent before it and could have revisited *Gettinger* to clarify, or in any other way change, the holding, the Supreme Court of Ohio allowed *Gettinger* to remain as authored. In *Pabst Brewing Co. v. Johnson,* 41 Ohio C.C. 675, 1903 WL 1077 (1903), a lower Ohio court held that "Section 6343 ... does not, we think alter the rule ... that a creditor may accept payment or security from an insolvent debtor, so long as it is not obtained for the benefit of a third party also." The lower court's decision was affirmed by the Supreme Court of Ohio without opinion. *Pabst Brewing Co. v. Peltz,* 81 Ohio St. 566, 91 N.E. 1136 (1910).

The most specific subsequent mention of the *Gettinger* holding by the Supreme Court of Ohio was in *Carruthers v. Kennedy,* 121 Ohio St. 8, 15, 166 N.E. 801, 803 (1929) where the court explicitly reaffirmed its earlier syllabus holding. ("The case of ... Gettinger ... involved the right of a creditor to receive payment from his debtor while such debtor is insolvent, and *it was held that section 6343 was not intended to prevent payments of the just amounts due to lawful creditors.*" (emphasis added))

The Ohio Supreme Court's holding in *Gettinger* states the law of Ohio, which this Court is obligated to follow.

**2.** The court notes a very recent change in the manner in which Supreme Court of Ohio decisions are interpreted. Previously, a holding of the Supreme Court of Ohio was contained *only in the syllabus* and the remaining portion of the decision was considered dicta. The court notes that *under amendments* to the Supreme Court Rules for the Reporting of Opinions (*effective May 1, 2002* ), a *holding is contained in the syllabus (if one is provided) and the text, including footnotes.* If a conflict exists between the syllabus and the text or footnotes, the syllabus controls. Supreme Court Rules for the Reporting of Decisions 1(B)(1) and (2). It is apparent this recent rule is not applicable to *Gettinger.*

## Ohio Preference Statutes

Although *Gettinger* has not been overruled by the Supreme Court of Ohio, the holding would not continue to retain force if the Ohio General Assembly enacted a change to the applicable statutory language. Despite repeated reenactments, the Ohio General Assembly has not altered the relevant statutory language.

Ohio Revised Code § 1313.56, which became effective October 1, 1953, states that:

A sale, conveyance, transfer, mortgage, or assignment, made in trust or otherwise by a debtor, and every judgment suffered by him against himself in contemplation of insolvency and with a design to prefer one or more creditors to the exclusion in whole or in part of others, and a sale, conveyance, transfer, mortgage, or assignment made, or judgment procured by him to be rendered, in any manner, with intent to hinder, delay, or defraud creditors, is void as to creditors of such debtor at the suit of any creditor. In a suit brought by a creditor of such debtor for the purpose of declaring such sale void, a receiver may be appointed who shall take charge of all the assets of such debtor, including the property so sold, conveyed, transferred, mortgaged, or assigned, and also administer all the assets of the debtor for the equal benefit of the creditors of the debtor in proportion to the amount of their respective demands, including those which are unmatured. (emphasis added)

Ohio Revised Code § 1313.57 states, in pertinent part, that:

Section 1313.56 does not apply unless the person to whom such *sale, conveyance, transfer, mortgage or assignment*

is made, knew of such fraudulent intent on the part of such debtor. (emphasis added) [3]

Section 6343, the version of the Ohio preference statute enacted in 1898, which was the subject to the Supreme Court of Ohio's review in *Gettinger*, read:

Every sale, conveyance, transfer, mortgage or assignment, whether made in trust or otherwise, by a debtor or debtors, and every judgment suffered by him or them, and every act or device done or resorted to by him or them, in contemplation of insolvency, or with a design to prefer one or more creditors to the exclusion in whole or part of others, and every sale, conveyance, transfer, mortgage, or assignment made, or judgment suffered by a debtor or debtors, or procured by him or them to be made, in any manner, with intent to hinder, delay or defraud creditors, shall be declared void as to creditors of such debtor or debtors, at the suit of any creditor or creditors, as hereinafter provided, and shall operate as an assignment and transfer of all the property and effects of such debtor or debtors, and shall inure to the equal benefit of all creditors of such debtor or debtors in proportion to the amount of their respective demands, including those which are unmatured. And every such sale, conveyance, transfer, mortgage or assignment made, and every such judgment suffered, and every such act or device done or resorted to, by any debtor or debtors, in the event of a deed of assignment being filed within ninety (90) days after the giving or doing of such thing or act, shall be conclusively deemed and held to be fraudulent, and shall be held to be void as to the assignee of such debtor or debtors, whereupon

---

**3.** Ohio Revised Code §§ 1313.56 and 1313.57 encapsulate the current Ohio preference statute. Although this decision primarily discuss-es Section 1313.56, the court notes the key language "sale, conveyance, transfer, mortgage or assignment" appears in both sections.

proof shown, such debtor or debtors was or were actually insolvent at the time of the giving or doing of such act or thing, whether he or they had knowledge of such insolvency or not.... (emphasis added) [4]

1898 Ohio Laws 290.

The statute as it read in 1898 (and amended in 1902) has changed, but these changes, including the enactment of the current statute in 1953, have not been substantive and have not changed the relevant language which was the basis for the *Gettinger* holding. See Buckley, 20 CAP. U.L. REV. at 878–89 ("Changes subsequent to the 1898–1902 revisions were modest and nonsubstantive .... Thus, in statutory terms, the elements of an Ohio avoidable preference have remained the same since early in this century."). This relevant language was a specific focus in the *Gettinger* decision:

There is another reason why these creditors cannot be compelled to repay the money so received by them. Said section 6343 makes no provision as to payments made in contemplation of insolvency or to create a preference, or with intent to hinder, delay, or defraud creditors. It is urged that payments are included and covered by the words "every act or device done or resorted to by him." This is not tenable. *The word "payment" is as familiar and as well understood as the words, "sale, conveyance, transfer, mortgage, or assignment," and, if the General Assembly had intended to legislate against payments, it would have used that word.* The Legislature having omitted the word "payment," this court cannot read it into the statute by construction; and especially is this true when we never had any legislation in this state against receiving payment of honest claims, and when such a construction would render the constitutionality of the act doubtful.[5]

---

4. Section 6343 of the Ohio Code was amended in 1902:

*Every sale, conveyance, transfer, mortgage or assignment, made in trust or otherwise by a debtor or debtors,* and every judgment suffered by him or them against himself or themselves in contemplation of insolvency, and with a design to prefer one or more creditors to the exclusion in whole or part of others, and every sale, conveyance, transfer, mortgage, or assignment made, or judgment procured by him or them to be rendered, in any manner, with intent to hinder, delay or defraud creditors, shall be declared void as to creditors of such debtor or debtors at the suit of any creditor or creditors as hereinafter provided, and shall operate as an assignment and transfer of all the property and effects of such debtor or debtors, and shall inure to the equal benefit of such creditor or creditors in proportion to the amount of their respective demands, including those which are unmatured. Provided, however, that the provisions of this section shall not apply unless the person or persons to whom such sale, conveyance, transfer, mortgage or assignment be made, knew of such fraudulent intent on the part of such debtor or debtors, and provided further, that nothing in this section contained, shall vitiate or affect any mortgage made in good faith to secure any debt or liability created simultaneously with such mortgage, if such mortgage be filed for record in the county wherein the property is situated, or as otherwise provided by law, within three (3) days after its execution, and where, upon foreclosure or taking possession of such property, the mortgagee fully accounts for the proceeds of such property. (emphasis added)

1902 Ohio Laws 608. The *Gettinger* court applied the 1898 statute. However, the key language of import to the *Gettinger* holding was unchanged in the 1902 amendment (and the subsequent amendments). Section 6344 addressed the appointment of a trustee for fraud or preferences and, although it was part of the prior Ohio preference statute, it was not relevant to the analysis of the *Gettinger* court. See generally Buckley, 20 CAP. U.L. REV. 863 at 873–76.

5. Regardless of the vitality of the constitutional argument today, the decision is clear that

*Id.* at 400, 67 N.E. at 740 (emphasis added).

In reviewing the current statute, Ohio Revised Code § 1313.56, it is evident that the language "sale, conveyance, transfer, mortgage, or assignment," which was the basis for the Supreme Court of Ohio's decision in *Gettinger* remains unchanged by the Ohio General Assembly since 1898. Neither the word "payment" nor the word "money" has ever been added to the statute. Under these circumstances, this court has no authority to interpret Ohio Revised Code § 1313.56 in any manner different than the *Gettinger* holding. See *Johnson,* 520 U.S. at 916, 117 S.Ct. at 1804.

### Other Ohio Cases

Roberds argues that, despite *Gettinger,* Ohio intermediate appellate courts have allowed the recovery of preferences even if the payment was in money. The parties' memoranda set forth a focused review of an Ohio court of appeals decision, *Malone v. Summer & Co.,* 17 Ohio App.2d 58, 244 N.E.2d 485 (1968). *Malone,* and a prior court of appeals case, *Flanagan v. Sloneker,* 52 Ohio App. 37, 2 N.E.2d 783 (1935), upon which *Malone* relies, contain, as their holdings, the commonly accepted proposition that a bankruptcy trustee may bring a preference action in a state court, even though the preference action is based on a federal bankruptcy statute and not a state statute.

The decisions cited by *Flanagan* demonstrate that the focus of those decisions was the recovery of payments under Section 60 of the Bankruptcy Act in state court, and not a state statute. See *Platt v. Ives,* 86 Conn. 690, 86 A. 579 (1913), in which the Supreme Court of Errors of Connecticut addressed a bankruptcy trustee raising a

federal claim under Section 60 of the Bankruptcy Act, not a state law claim. Similarly, in *Cohen v. Goldman,* 250 F. 599 (1st Cir.1918), state law was not analyzed.

The *Malone* holding did not require any discussion of Ohio preference law; nevertheless, the *Malone* court, in *dicta,* discussed *Gettinger* and the Ohio Preference Statute. The *Malone* court looked to the Ohio Fraudulent Conveyance Act, Ohio Revised Code § 1336.01(B), which addressed fraudulent transfers and defined a conveyance to include the payment of money. *Id.* at 67, 244 N.E.2d at 491. [The current Ohio Uniform Fraudulent Transfer Act (which replaced the repealed Ohio Fraudulent Conveyance Act in 1990) also includes the "payment of money" within the meaning of "transfer." Ohio Revised Code § 1336.01(L)] *Malone* concluded, based on the changes in the Ohio statutes for fraudulent transfers, which were enacted in 1961, a payment of money could be included under the Ohio Preference Statute, which was enacted in 1953. In addition to this portion of the *Malone* decision being dicta, it must be recalled that the *Malone* court, as an intermediate Ohio court, is "bound to adhere to the principles" in *Gettinger.* See *Kessler,* 72 Ohio St.3d at 102–03, 647 N.E.2d at 797. Equally significant, *Malone,* although perhaps unintentionally, clarifies the fact that the same Ohio General Assembly which amended the Ohio fraudulent transfer statutes to specifically include "payments of money" failed, in the post *Gettinger* legal environment, to make any such changes to the Ohio Preference Statute. This fact alone would be sufficient to conclude that, under current Ohio law, an intentional preference cannot be recovered if the payment is in money.

More significantly, in the same year as *Flanagan,* a decision from another Ohio

the Supreme Court of Ohio focused on its

interpretation of the statutory language.

Court of Appeals, which examined a preference under Ohio law, not federal law, reached the conclusion required by *Gettinger* on the question of money payments as preferential transfers. See *Erie R.R. v. Fulton*, 19 Ohio Law Abs. 70, 1935 WL 1800 (1935) ("A preference created by an insolvent debtor by the payment of an honest debt in cash or current exchange is lawful in Ohio . . . .") This decision, which directly addressed the payment in money under the Ohio Preference Statute, concluded, consistent with *Gettinger*, an intentional preference cannot be recovered if the payment was in money.

Roberds also cites *Prudential Ins. Co. v. Sci. Park Ltd. P'ship*, 106 Ohio App.3d 823, 830, 667 N.E.2d 437, 442 (1995). Although this decision cites the Ohio Preference Statute, the action was also brought under Section 1336, *et seq.* and was a claim for a fraudulent transfer. *Id.* at 825, 667 N.E.2d at 439. In addressing the payment in money issue, the decision cites Ohio Revised Code § 1336.01(L)—which, as noted earlier, *allows payments in money for fraudulent transfers under the Ohio Uniform Fraudulent Transfer Act. Id.* at 829, 667 N.E.2d at 441. The decision does not mention *Gettinger.*

None of the Ohio cases cited by Roberds alter the binding syllabus of the Supreme Court of Ohio in *Gettinger.* See *Johnson*, 520 U.S. at 916, 117 S.Ct. at 1804.

### Sixth Circuit Cases

Although this court finds no ambiguity in the Supreme Court of Ohio's holding in *Gettinger* that an intentional preference cannot be recovered if the payment was in money, to the extent it could be argued there is such ambiguity, the Sixth Circuit found none when it considered the Supreme Court of Ohio's decision in *Gettinger.* The Sixth Circuit Court of Appeals considered *Gettinger* in *Irwin v. Maple (In re Gaskill)*, 252 F. 10 (6th Cir.1918). In that decision, the Sixth Circuit Court of Appeals reiterated the holding in *Gettinger* that an intentional preference cannot be recovered if the payment was in money:

It cannot be questioned that the rule, as thus in substance pointed out, was uniformly maintained in Ohio for more than half a century; and yet it would seem that the General Assembly of Ohio has introduced certain statutory alterations which were meant to work a distinct change of the rule. It is true that in *Bank v. Gettinger*, 68 Ohio St. 389, 67 N.E. 739, reversing the decision of the Lucas circuit court (13–23 O.C.C. 77, 1901 WL 1151), it was held that under sections 6343 and 6344 of the Ohio Revised Statutes, as amended April 26, 1898 (93 O.L. 290), certain creditors who in effect had been preferred could not be compelled to repay money which they had received from their debtor while he was insolvent, although he made the payments in contemplation of insolvency and with a design to prefer these creditors to the exclusion of the others, or with intent to hinder, delay, or defraud his creditors, even though he made an assignment which was filed within 90 days after such payments. The reasons for this ruling are important, and are to be found in the opinion (pages 399, 400); they may be stated thus: (1) That the creditors were conceded to have "acted in good faith, and without notice, in receiving" the payments; and (2) that payment was not, while "sale, conveyance, transfer, mortgage, or assignment" was, prohibited by the statute. The first reason clearly implies that, if the creditor is cognizant of his debtor's purpose, the preference must fail. *The second reason we think finds apt illustration in the Ohio Supreme Court's affirmance, without opinion, of Brewing Co. v. Peltz*, 81 Ohio St. 566, 91 N.E. 1136, *decision*

*below* 17 Ohio Cir.Ct.R.(N.S.) 1, appearing there as *Pabst Brewing Co. v. Johnson.* Examination of the record in that case, to which attention has been called by counsel, shows that the circuit court in substance found that when the creditor Pelitz (Peltz) and two other named creditors received payment of their claims they "knew of the insolvency" of their debtor, Johnson, and of his intention to secure the payment of their claims by an instrument previously signed by Johnson. This instrument provided for payment to Peltz of sufficient money to cover his claim and the claims of the two other creditors, and was executed with the understanding that Peltz was to apply the money accordingly; but the instrument appears at last to have been canceled, and the three claims were in fact paid in cash by Johnson's attorney at his direction. *It is to be inferred that the original design to make Peltz a trustee under the instrument was abandoned, and direct payment in cash to each of the creditors resorted to, for the very purpose of avoiding the statute. This inference is in accord with the second reason stated, as we have seen, in Bank v. Gettinger,* 68 Ohio St. at page 400, 67 N.E. 739, *and the reason itself points to a distinct ground, and the only satisfactory one we can discover, for the affirmance of Brewing Co. v. Peltz. It is to be observed, moreover, that the reason for treating payment as not falling within the inhibition of the statute, as held in Bank v. Gettinger, was in accord with earlier rulings of the same court. Thus, under the statute of 1838 (36 O.L. 56, Sec. 3), a bill of sale, in effect a mortgage of chattels, was held not to fall within the provision forbidding "assignments" of debtors to trustees "in contemplation of insolvency with the design to prefer one or more creditors,"* etc.

*(Atkinson v. Tomlinson,* 1 Ohio St. 237, 240, 241 [(1853)]). *Again, in speaking of the scope of the statute considered in Cross v. Carstens (set out in* 49 Ohio St. [548] at page 565, 31 N.E. 506 [(1892)]), *which in terms made "assignments" to a trustee, etc., to prefer particular creditors "inure to the equal benefit of all creditors." it was said* (49 Ohio St. [at] 566, 31 N.E. [at] 507) (footnotes omitted; emphasis added)

*Id.* at 16–17. The *Irwin* decision acknowledged that the decision in *Gettinger* rested on the premise that a preferential payment in money was not prohibited under Ohio law. The Sixth Circuit has never retreated from that statement concerning *Gettinger.*

There are other Sixth Circuit cases which discuss Ohio preference law; however, they never dispute the determination of the initial panel in *Irwin.* See *Arrow v. Fed. Reserve Bank of St. Louis,* 358 F.3d 392, 393 (6th Cir.2004) (Court noting that, pursuant to Sixth Circuit Rule 206(c), reported panel opinions are binding on subsequent panels and no subsequent panel overrules the published opinion of a previous panel.)

Roberds cites *Conroy v. Shott,* 363 F.2d 90 (6th Cir.1966), which involved a ponzi scheme and elements of bad faith. The *Conroy* court determined *Gettinger* was not applicable in the factual circumstances before the court. The decision, quoting the unreported decision of the district court, states that:

"Defendant argues that even if Stickler intended to defraud other creditors in making payments to defendant, plaintiff is precluded from recovery under the construction given O.R.C. § 1313.56 (then R.S. § 6343) by the Supreme Court of Ohio in the venerable case of *National Bank of Commerce v. Getting-*

*er*, 68 Ohio St. 389, 67 N.E. 739 (1903). While the syllabus would seem to give some support to defendant's position, the opinion underscores a difference in factual pattern in the following language: 'In the case at bar there is no averment in the amended petition that the defendants below acted in bad faith, or had notice of the insolvency of (the debtor), or received more money from him than he owed them, or that they knew that he had made the said payments in contemplation of insolvency, or to create a preference, or to hinder, delay or defraud his creditors * * * There is no affirmant that the persons receiving said payments knew of his said intent and purposes, and, therefore, said petition by its silence, concedes that they acted in good faith, and without notice, in receiving said payments.' Having concluded that at the very least defendant should have known Stickler's fraudulent intent, the lack of application of Gettinger is readily apparent. Further reading of the opinion demonstrates that the Ohio Supreme Court intended that one receiving preferential payment was to be given protection only if he acted 'in good faith,' on the basis of 'for fair value' and received 'payment of honest claims,' none of which elements is here present." (emphasis added)

*Id.* at 93. Roberds' complaint does not allege facts which bear any resemblance to the fact pattern in *Conroy*. *Conroy* does not focus on the holding of *Gettinger* concerning payment in money, but instead addresses the issue of fraudulent intent. Additionally, as a federal court, the *Conroy* court could not have intended to change the holding in *Gettinger, Johnson,* 520 U.S. at 916, 117 S.Ct. at 1804, and could not have intended to overrule the published decision of a prior panel of the Sixth Circuit. *Conroy,* 363 F.2d at 93.

Although in *Nat'l Finance Co. v. Marlow (In re Berman & Co.),* 343 F.2d 125 (6th Cir.1965), the Sixth Circuit affirmed that the written assignment from insurance proceeds was a preference that could be avoided under Ohio law, the decision did not contradict the holding in *Gettinger,* since the facts before it did not involve an operating business and the court's determination is permissible based on Ohio corporate trust fund law. *Id.* at 126–27; See *Rouse v. Merchants' Nat'l Bank of Cincinnati,* 46 Ohio St. 493, 502–04, 22 N.E. 293, 296–97 (1889).

Additionally, Ohio preference law appears to have been used by the United States in tax cases. See, e.g., *United States v. The Adams Bldg. Co.,* 531 F.2d 342 (6th Cir.1976) (no citation to *Gettinger* or Ohio Revised Code § 1313.56); *Delia v. Commissioner,* 9 Ohio Misc. 96, 362 F.2d 400 (6th Cir.1966) (The decision did not discuss the syllabus holding of *Gettinger.*). *Delia* and *Adams* are also based on Ohio corporate trust fund law involving a company which has "ceased to do business." Cf. *Berman,* 343 F.2d at 126–27; *Rouse,* 46 Ohio St. at 502–04, 22 N.E. at 296–97. As previously noted, Roberds, for purposes of this motion, is acknowledged to be an operating company at the time of the alleged preferences.

The Sixth Circuit has never retreated from its position that the *Gettinger* holding is the law of Ohio. None of the Sixth Circuit cases cited by Roberds alter the binding syllabus of the Supreme Court of Ohio in *Gettinger.* See *Johnson,* 520 U.S. at 916, 117 S.Ct. at 1804.

### Other Arguments

Both parties' memoranda contain arguments appropriately characterized as policy considerations; however, whether the Ohio General Assembly enacted, and reenacted, an anomalous statute purporting to

permit the recovery of preferences, while intentionally excluding from its ambit the payment of a preference in money, which is the most frequent form of a preference, or the Supreme Court of Ohio has unduly restricted the reach of Ohio preference law, particularly considering contemporary commercial circumstances, or the Ohio General Assembly and the Supreme Court of Ohio have carefully constructed a conscious response, which they deem best for Ohio law, all such arguments must be addressed to those entities and not this court. Any change in the *Gettinger* holding would require a decision from the Supreme Court of Ohio or a change by the Ohio General Assembly in the relevant language of the Ohio Revised Code.

## Conclusion

Broyhill's Motion for Partial Summary Judgment is **GRANTED.**[6] Since all the transfers alleged in the complaint were in money, Broyhill is granted summary judgment as to Count II of Roberds' complaint, which seeks avoidance of transfers pursuant to Ohio Revised Code §§ 1313.56 and 1313.57 "or other applicable law." An Order in accordance with this decision is simultaneously entered.

## ORDER GRANTING BROYHILL FURNITURE SUMMARY JUDGMENT ON COUNT II OF THE COMPLAINT OF ROBERDS, INC.

In accordance with the simultaneously filed *Decision On Order Granting Broyhill Furniture Summary Judgment On Count II Of The Complaint Of Roberds, Inc.,* Broyhill's Furniture's Motion for Partial Summary Judgment (Doc. 55) is **GRANTED.**

**6.** To the extent this issue is the subject of appellate review, a certification of this legal issue for determination by the Supreme Court of Ohio could be appropriate; however, in the

This order is entered upon an express determination that there is no further reason for delay and upon an express direction for the entry of judgment pursuant to Bankruptcy Rule 7054.

**SO ORDERED.**

circumstances of this adversary proceeding, this was not a realistic option for this trial court.