[This opinion has been published in *Ohio Official Reports* at 72 Ohio St.3d 98.]

THE STATE EX REL. HECK ET AL., *v*. KESSLER, JUDGE.

[Cite as *State ex rel. Heck v. Kessler*, 1995-Ohio-304.]

*Prohibition to prevent judge from exercising jurisdiction in an aggravated menacing case—Mandamus to compel judge to vacate prior decisions and to try defendant on an ethnic intimidation charge—Writs granted, when.*

(No. 94-1831—Submitted February 21, 1995—Decided April 26, 1995.)

IN MANDAMUS AND PROHIBITION.

_____

{¶ 1} In cases arising from separate incidents, James B. May, Jr. and Mark J. Staton were charged with ethnic intimidation, R.C. 2927.12, predicated on aggravated menacing. Respondent, Judge John W. Kessler of the Montgomery County Court of Common Pleas, granted May's and Staton's motions to dismiss the indictments on the basis that R.C. 2927.12 is unconstitutionally vague, in violation of Section 16, Article I of the Ohio Constitution and the Fourteenth Amendment to the United States Constitution because (1) the "by reason of" phrase used in R.C. 2927.12 describes no statutorily cognizable mental state as required by R.C. 2901.21 for an element of the offense, and (2) the language of R.C. 2927.12 does not sufficiently specify the relationship of the race, etc. of the other "person or group of persons" to the actor or victim. The Court of Appeals for Montgomery County affirmed Judge Kessler's dismissal of the ethnic intimidation charges on the basis that R.C. 2927.12 is unconstitutionally vague. However, the court of appeals further held that Judge Kessler erred in dismissing the underlying aggravated menacing charges. The court of appeals certified its judgment as being in conflict with the judgment of the Court of Appeals for Delaware County in *State v. Wyant* (Dec. 6, 1990), Delaware App. No. 90-CA-2, unreported.

**{¶ 2}** The *May* and *Staton* cases were consolidated with other ethnic intimidation cases in this court, and in *State v. Wyant* (1992), 64 Ohio St.3d 566, 597 N.E.2d 450 ("*Wyant I*"), at syllabus, R.C. 2927.12 was held to "create a 'thought crime,' in violation of Section 11, Article I of the Ohio Constitution, and the First and Fourteenth Amendments to the United States Constitution." We affirmed the judgment of the court of appeals dismissing May's and Staton's ethnic intimidation charges and remanding the causes to Judge Kessler to proceed on the underlying aggravated menacing charges. In so holding, we did not reach constitutional challenges to R.C. 2927.12 based on vagueness, equal protection, due process, and overbreadth. *Wyant I*, *supra*, at 579-580, 597 N.E.2d at 459.

**{¶ 3}** The cases in *Wyant I*, including *May* and *Staton*, were remanded to this court by the Supreme Court of the United States for the purpose of "further consideration in light of *Wisconsin v. Mitchell*, 508 U.S. __ [113 S.Ct. 2194, 124 L.Ed.2d 436] (1993)." See (1993), 509 U.S. __, 113 S.Ct. 2954, 125 L.Ed.2d 656. In *State v. Wyant* (1994), 68 Ohio St.3d 162, 624 N.E.2d 722 ("*Wyant II*"), we vacated *Wyant I* and held in the syllabus that "R.C. 2927.12, the Ohio Ethnic Intimidation Act, is constitutional under the United States and Ohio Constitutions." In this court's mandate, as to May and Staton, it was ordered that "the judgment of the court of appeals is reversed and the cause is remanded for a new trial consistent with the opinion rendered herein."

**{¶ 4}** Although May and Staton did not file a motion for rehearing, this court *sua sponte* denied rehearing. Other defendants in *Wyant II* filed motions for rehearing, which argued, in part, that this court had not decided other constitutional issues raised regarding R.C. 2927.12, including the vagueness claim. We overruled the motions.

**{¶ 5}** On remand from this court, May and Staton filed motions to dismiss the ethnic intimidation charges. On June 30 and July 1, 1994, Judge Kessler dismissed those charges and further ordered that the cases be set for trial on the

underlying aggravated menacing charges. The state appealed Judge Kessler's dismissal orders, and on September 6, 1994, Judge Kessler vacated the scheduled trial dates for May and Staton and stayed all proceedings pending resolution of the state's appeal.

{¶ 6} On August 23, 1994, relators, Montgomery County Prosecuting Attorney Mathias H. Heck, Jr., and then-Ohio Attorney General Lee Fisher, filed a complaint in this court seeking (1) a writ of mandamus ordering Judge Kessler to vacate his June 30 and July 1, 1994 decisions and set the matter for trial on the ethnic intimidation charges, and (2) a writ of prohibition preventing Judge Kessler from requiring the state to proceed against May and Staton on the aggravated menacing charges. On October 19, 1994, we overruled Judge Kessler's motion to dismiss and granted an alternative writ. The Court of Appeals for Montgomery County granted leave to the state to appeal Judge Kessler's decisions, but later stayed further appellate proceedings pending the outcome of relators' action in this court. On January 18, 1995, we denied a request for oral argument.

{¶ 7} The cause is now before this court for a consideration of the parties' arguments and submitted evidence.

———————————

*Mathias H. Heck, Jr.*, Montgomery County Prosecuting Attorney, and *Carley J. Ingram*, Assistant Prosecuting Attorney; *Betty D. Montgomery*, Attorney General, and *Simon B. Karas*, Deputy Chief Counsel, for relators.

*David H. Bodiker*, Ohio Public Defender, and *Susan Gellman*, Assistant Public Defender, for respondent.

———————————

**Per Curiam.**

{¶ 8} Initially, relators note that Staton has died and that the action is moot as to him. Accordingly, that portion of relators' complaint for extraordinary relief

is properly dismissed as moot. The following discussion is limited to May, defendant in the remaining underlying criminal case pending before Judge Kessler.

{¶ 9} As to their claim for a writ of mandamus, relators must establish a clear legal right to have Judge Kessler try May on the ethnic intimidation charge, a corresponding clear legal duty on the part of Judge Kessler, and the absence of a plain and adequate remedy at law. *State ex rel. Seikbert v. Wilkinson* (1994), 69 Ohio St.3d 489, 490, 633 N.E.2d 1128, 1129. Mandamus may not be employed as a substitute for appeal from an interlocutory order. *State ex rel. Horwitz v. Cuyahoga Cty. Court of Common Pleas, Probate Div.* (1992), 65 Ohio St.3d 323, 328, 603 N.E.2d 1005, 1009; see, generally, R.C. 2731.05. The state has the right to appeal even interlocutory orders in a criminal case by leave of the court of appeals pursuant to R.C. 2945.67. *State ex rel. Steckman v. Jackson* (1994), 70 Ohio St.3d 420, 438-439, 639 N.E.2d 83, 96-97. The Court of Appeals for Montgomery County granted leave for the state to appeal in May's criminal case.

{¶ 10} Generally, the availability of a discretionary appeal is an adequate remedy that will preclude a writ of mandamus. *State ex rel. Birdsall v. Stephenson* (1994), 68 Ohio St.3d 353, 356, 626 N.E.2d 946, 949. In other words, extraordinary remedies like mandamus and prohibition may not be employed before trial on the merits as a substitute for appeal for the purpose of reviewing mere errors or irregularities in the proceedings of a court having proper jurisdiction. *State ex rel. Levin v. Sheffield Lake* (1994), 70 Ohio St.3d 104, 109, 637 N.E.2d 319, 324.

{¶ 11} Nevertheless, in Ohio, it is recognized that a writ of mandamus is an appropriate remedy to require a lower court to comply with an appellate court's mandate directed to that court. *State ex rel. Potain v. Mathews* (1979), 59 Ohio St.2d 29, 13 O.O.3d 17, 319 N.E.2d 343; *State ex rel. Schneider v. Brewer* (1951), 155 Ohio St. 203, 44 O.O. 170, 98 N.E.2d 2. This view comports with the holdings of the Supreme Court of the United States, as well as other federal and state courts. *Vendo Co. v. Lektro-Vend Corp.* (1978), 434 U.S. 425, 427-428, 98 S.Ct. 702, 703-

704, 54 L.Ed.2d 659, 662-663; *In re Sanford Fork & Tool Co.* (1895), 160 U.S. 247, 255, 16 S.Ct. 291, 293, 40 L.Ed. 414, 416; *Casey v. Planned Parenthood of Southeastern Pennsylvania* (C.A.3, 1994), 14 F.3d 848, 856-857; *Hartford Acc. & Indemn. Co. v. Gulf Ins. Co.* (C.A.7, 1988), 837 F.2d 767, 774; *Cleveland v. Fed. Power Comm.* (C.A.D.C.1977), 561 F.2d 344; *Ex Parte Ufford* (Ala.1994), 642 So.2d 973; see, generally, 52 American Jurisprudence 2d (1970), Mandamus, Section 355.

{¶ 12} The Supreme Court of the United States has held:

"When a case has been once decided by this court on appeal, and remanded to the Circuit Court, whatever was before this court, and disposed of by its decree, is considered as finally settled. The Circuit Court is bound by the decree as the law of the case; and must carry it into execution, according to the mandate. That court cannot vary it, or examine it for any other purpose than execution; or give any other or further relief; or review it, even for apparent error, upon any matter decided on appeal; or intermeddle with it, further than to settle so much as has been remanded. *** If the Circuit Court mistakes or misconstrues the decree of this court, and does not give full effect to the mandate, its action may be controlled, either upon a new appeal (if involving a sufficient amount) or by a writ of mandamus to execute the mandate of this court. *** But the Circuit Court may consider and decide any matters left open by the mandate of this court; and its decision of such matters can be reviewed by a new appeal only. *** The opinion delivered by this court, at the time of rendering its decree, may be consulted to ascertain what was intended by its mandate; and, either upon an application for a writ of mandamus, or upon a new appeal, it is for this court to construe its own mandate, and to act accordingly." *In re Sanford Fork & Tool Co.*, *supra*, 160 U.S. at 255-256, 16 S.Ct. at 293, 40 L.Ed. at 416; *Vendo Co.*, *supra*, 434 U.S. at 427-428, 98 S.Ct. at 703-704, 54 L.Ed.2d at 662-663.

**{¶ 13}** The Supreme Court of the United States has thus recognized the availability of *either* mandamus or appeal as appropriate remedies to secure lower-court compliance with the Supreme Court's prior mandate. See, generally, Annotation, Supreme Court's Views as to Remedies Available in Supreme Court to Compel Lower Court's Compliance with Supreme Court's Earlier Decision in Case (1979), 54 L.Ed.2d 921, 922, Section 2[a]. An appeal is inadequate if it is not complete in its nature, beneficial and speedy. *State ex rel. Liberty Mills, Inc. v. Locker* (1986), 22 Ohio St.3d 102, 104, 22 OBR 136, 137, 488 N.E.2d 883, 885-886. In cases where a lower court refuses to follow a superior court's mandate, appeal is an inadequate remedy:

"[E]ven an interlocutory appeal would be an inadequate alternative to mandamus in these circumstances. The purpose of an appeal is to establish legal rights. In contrast, the purpose of mandamus is to enforce legal rights that have already been established. Mandamus proceeds on the assumption that the petitioner has the legal right asserted. In this case [the petitioner's] position was that the court of appeals had already decided that the stock did not need to be valued. If he were to appeal he would be asking the court of appeals to say again what he maintained the court had already said. Mandamus was the only means available to him to put teeth into that adjudication. If he were wrong in his interpretation of the decree he would not be entitled to mandamus, but if he were right mandamus was the appropriate remedy. ***" *Hewitt v. Ryan* (Iowa 1984), 356 N.W.2d 230, 234.

**{¶ 14}** Based upon the foregoing authorities, the availability of an appeal for the state, from Judge Kessler's decision dismissing the ethnic intimidation charge against May and ordering May to stand trial on the underlying aggravated menacing charge, does not preclude relators' action for a writ of mandamus to compel Judge Kessler's compliance with the mandate in *Wyant II*. To hold otherwise might lead to the result of a lower court perpetually refusing a superior court's mandate, necessitating repeated, ineffective appeals.

**{¶ 15}** In the mandate issued in *Wyant II*, this court ordered that "the judgment of the court of appeals is reversed and the cause is remanded for a new trial consistent with the opinion rendered herein." The syllabus of *Wyant II* provides that "R.C. 2927.12, the Ohio Ethnic Intimidation Act, is constitutional under the United States and Ohio Constitutions."

**{¶ 16}** Judge Kessler contends that mandamus will not lie because he merely ruled on the constitutionality of R.C. 2927.12, which is an action within his judicial discretion. A writ of mandamus will not issue to control judicial discretion, even if that discretion is abused. *State ex rel. Keenan v. Calabrese* (1994), 69 Ohio St.3d 176, 180, 631 N.E.2d 119, 122, citing *State ex rel. Kirtz v. Corrigan* (1991), 61 Ohio St.3d 435, 439, 575 N.E.2d 186, 189; R.C. 2731.03. However, "[a]bsent extraordinary circumstances, such as an intervening decision by the Supreme Court, an inferior court has *no discretion* to disregard the mandate of a superior court in a prior appeal in the same case." (Emphasis added.) *Nolan v. Nolan* (1984), 11 Ohio St.3d 1, 11 OBR 1, 462 N.E.2d 410, syllabus; *Columbus Bd. of Edn. v. Franklin Cty. Bd. of Revision* (1994), 70 Ohio St.3d 344, 345, 639 N.E.2d 25, 26. As noted previously, mandamus is an appropriate remedy in these circumstances.

**{¶ 17}** Judge Kessler further contends that his dismissal of the ethnic intimidation charges did not exceed this court's mandate in *Wyant II* because the dismissal was on grounds other than free speech rights of the First Amendment to the United States Constitution. He argues that this court never decided whether R.C. 2927.12 is unconstitutionally vague. It is axiomatic that the syllabus of an opinion issued by the Supreme Court of Ohio states the law of the case, and, as such, all lower courts in this state are bound to adhere to the principles set forth therein. *Smith v. Klem* (1983), 6 Ohio St.3d 16, 18, 6 OBR 13, 15-16, 450 N.E.2d 1171, 1173; *Grange Mut. Cas. Co. v. Smith* (1992), 80 Ohio App.3d 426, 431, 609 N.E.2d 585, 588. It is also generally improper for a lower court to determine that a syllabus of an Ohio Supreme Court opinion is *obiter dictum*. The *Wyant II*

syllabus broadly states that R.C. 2927.12 is constitutional and is not limited to attacks based upon free speech.

{¶ 18} Further, under S.Ct.R.Rep.Op. 1(B), "[t]he syllabus of a Supreme Court opinion states the controlling point or points of law *decided in and necessarily arising from the facts of the specific case* before the Court for adjudication." (Emphasis added.) See, also, *Worrell v. Athens Cty. Court of Common Pleas* (1994), 69 Ohio St.3d 491, 495, 633 N.E.2d 1130, 1134. The vagueness issue was raised in *Wyant I* and *II*, as well as in some of the motions for rehearing.

{¶ 19} On remand from this court, Judge Kessler again dismissed the ethnic intimidation charges against May based upon the prior court of appeals' decision because he found that he was "constrained to follow the unreversed decision of [the court of appeals in *Wyant I*]." Judge Kessler now concedes that the court of appeals' decision was reversed by this court in *Wyant II*. Since the issue of the alleged unconstitutional vagueness of R.C. 2927.12 was unquestionably before the court in May's appeal in *Wyant II*, our reversal of the court of appeals' judgment, which was based upon this constitutional ground, manifestly decided the issue. If this was not intended, reversal would not have been warranted. Therefore, Judge Kessler's dismissal of the ethnic intimidation charge against May based on the prior court of appeals' judgment exceeded the scope of this court's mandate on remand. Accordingly, relators are entitled to a writ of mandamus to compel Judge Kessler to comply with the *Wyant II* mandate by proceeding to try May on the ethnic intimidation charge.

{¶ 20} As to relators' claim for a writ of prohibition, they must establish that (1) Judge Kessler is about to exercise judicial or quasi-judicial power, (2) the exercise of that power is unauthorized by law, and (3) denying the writ will result in injury for which no other adequate remedy exists in the ordinary course of law. *State ex rel. Keenan*, *supra*, 69 Ohio St.3d at 178, 631 N.E.2d at 121. While

addressing relators' mandamus claim, Judge Kessler's brief does not specifically respond to relators' prohibition claim. In these circumstances, the availability of an appeal does not preclude extraordinary relief. *State ex rel. Potain*, *State ex rel. Schneider*, and *Vendo Co.*, *supra*. Further, absent the stay entered by Judge Kessler pending resolution of the state's discretionary appeal in May's criminal case, which stay was issued after the filing of this action by relators, Judge Kessler would proceed to try May on the underlying aggravated menacing charge. This action is legally unauthorized because in addition to lacking discretion to depart from a superior court's mandate, an inferior court also lacks jurisdiction to do so. *State ex rel. TRW, Inc. v. Jaffe* (1992), 78 Ohio App.3d 411, 604 N.E.2d 1376 (retrial of damages inconsistent with the Supreme Court's opinion would exceed the jurisdiction of the court). As we stated in *State ex rel. Potain*, *supra*, 59 Ohio St.2d at 32, 13 O.O.3d at 18-19, 391 N.E.2d at 345:

"The doctrine of law of the case is necessary, not only for consistency of result and the termination of litigation, but also to preserve the structure of the judiciary as set forth in the Constitution of Ohio. Article IV of the Ohio Constitution designates a system of 'superior' and 'inferior' courts, each possessing a distinct function. *The Constitution does not grant to a court of common pleas jurisdiction to review a prior mandate of a court of appeals*." (Emphasis added.)

{¶ 21} Consequently, relators are entitled to a writ prohibiting Judge Kessler from proceeding to try May on the lesser aggravated menacing charge alone. *State ex rel. TRW*, *supra*.

{¶ 22} Accordingly, we grant the requested writs of mandamus and prohibition to relators as to May's criminal case and dismiss as moot that portion of the complaint relating to Staton's criminal case.

*Writs granted in part*
*and dismissed in part.*

MOYER, C.J., DOUGLAS, WRIGHT, RESNICK, F.E. SWEENEY, PFEIFER and COOK, JJ., concur.

_____