[Cite as *State v. Minifee*, 2024-Ohio-64.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 112521 |
| v. | : | |
| BRANDON MINIFEE, | : | |
| Defendant-Appellant. | : | |

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED AND REMANDED
**RELEASED AND JOURNALIZED:** January 11, 2024

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-07-498906-A

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, Owen Knapp and Alan F. Dowling, Assistant Prosecuting Attorneys, *for appellee*.

Kimberly Kendall Corral and Gabrielle M. Ploplis, *for appellant*.

LISA B. FORBES, J.:

{¶ 1} Brandon Minifee ("Minifee") appeals the trial court's journal entry denying his motion for leave to file a motion for new trial. After reviewing the facts of the case and pertinent law, we reverse the trial court's decision.

## I.    Facts and Procedural History

{¶ 2}    On December 14, 2007, Minifee was found guilty of felony murder with firearm specifications, two counts of felonious assault with firearm specifications, and having a weapon while under disability related to the killing of Ronald Pierce ("Pierce"). The court sentenced Minifee to an aggregate term of 19-years-to-life in prison. In 2009, this court affirmed in part and reversed in part Minifee's convictions and prison sentence. *State v. Minifee*, 8th Dist. Cuyahoga No. 91017, 2009-Ohio-3089, ("*Minifee I*"). Specifically, this court found that Minifee's felony-murder conviction and two felonious-assault convictions should have merged into one allied offense for sentencing purposes under R.C. 2941.25. *Minifee I* at ¶ 106, 113. This court remanded the case to the trial court "for further proceedings consistent with [the] opinion" in *Minifee I*.[1] *Minifee I* at ¶ 115. This remand order contemplated a resentencing hearing for merger of allied offenses. *See State v. Wilson*, 129 Ohio St.3d 214, 2011-Ohio-2669, 951 N.E.2d 381, ¶ 13

---

[1] Our review of the record shows that the court did not hold a resentencing hearing in accordance with *Minifee I's* mandate. We note that, in 2013, this court released *State v. Minifee*, 8th Dist. Cuyahoga No. 99780, 2013-Ohio-5132 ("*Minifee II*"), in which the trial court was again instructed to resentence Minifee pursuant to the mandate in *Minifee I*. *Minifee II* at ¶ 3.

This case is remanded to the trial court for a third time to resentence Minifee. We note that, on August 9, 2011, the state filed a "notice of election of allied offenses and request for hearing on order of remand," in which it elected to proceed to resentencing on Minifee's felony-murder conviction. We further note that "[w]hen an inferior tribunal refuses to follow the mandate of [a] superior one, mandamus or prohibition may lie." State ex rel. Gallagher v. Collier-Williams, 8th Dist. Cuyahoga No. 111229, 2022-Ohio-1177, ¶ 13. See also State ex rel. Heck v. Kessler, 72 Ohio St.3d 98, 100, 647 N.E.2d 792 (1995) ("[I]n Ohio, it is recognized that a writ of mandamus is an appropriate remedy to require a lower court to comply with an appellate court's mandate directed to that court.").

("[F]or an allied-offenses sentencing error[,] the appellate court's remand requires the trial court to conduct a new sentencing hearing.").

{¶ 3} Pertinent to this appeal, on August 5, 2021, and on October 4, 2021, Minifee filed motions for leave to file a motion for a new trial based on newly discovered evidence. This court will address Minifee's motions together. Attached to the motions are three affidavits. In one of the affidavits, Patricia Gunn ("Gunn"), who testified at Minifee's trial, recanted her testimony that "[s]he did not see Pierce shooting a gun." Instead she claimed that she saw Pierce had a firearm and shot at Minifee "three times" before Minifee "might have shot back" at Pierce. We find that Gunn's affidavit is dispositive of this appeal and limit our discussion accordingly.

{¶ 4} On February 16, 2023, the trial court denied Minifee's motions for new trial. The next day, the court issued findings of fact and conclusions of law, which include the following as related to Gunn's affidavit: "Minifee provided no date specific information as to when he actually learned about * * * Gunn's recantation to counsel * * *." Therefore, the trial court concluded, the "over 13[-]year delay was wholly unreasonable."

{¶ 5} It is from this order that Minifee appeals, raising, verbatim, these five assignments of error for our review:

> I. The trial court abused its discretion wholly ignored the Supreme Court decision of *State v. Bethel*, instead holding that a defendant must establish that he filed his motion for leave within a reasonable time after discovering the evidence relief upon to support the motion for new trial.

II. The trial court abused its discretion when it confused the delay standard set forth in R.C. 2953.23 with the delay standard Criminal Rule 33 which only requirs the defendant to establish he was unavoidably prevented from discovering the evidence on which he relies within 120 of his conviction.

III. The trial court abused its discretion when it inferred, based on no facts, that Minifee could have discovered the information in Patricia Gunn, Dennis White, and Dameian Webber

IV. The trial court abused its discretion when it determined that Minifee was not unavoidably delayed from discovering information which the state did not disclose in violation of appellant Minifees 4th and 15th amendment rights.

V. The trial court abused its discretion in failing to hold an evidentiary hearing.

## II. Law and Analysis

{¶ 6} Appellate courts review the denial of leave to file a motion for a new trial for an abuse of discretion. *State v. Sutton*, 2016-Ohio-7612, 73 N.E.3d 981, ¶ 13 (8th Dist.). An abuse of discretion "'connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.'" *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983), quoting *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980). The Ohio Supreme Court recently explained that an abuse of discretion "involves more than a difference of opinion." *State v. Weaver*, Slip Opinion No. 2022-Ohio-4371, ¶ 24. That is, a trial court's judgment that is "profoundly and wholly violative of fact and reason" constitutes an abuse of discretion. *Id.*

{¶ 7} Pursuant to Crim.R. 33(A)(6), a "new trial may be granted on motion of the defendant * * * [w]hen new evidence material to the defense is discovered

which the defendant could not with reasonable diligence have discovered and produced at the trial." Under Crim.R. 33(B), motions for a new trial based on "newly discovered evidence" shall be filed within 120 days from the day the verdict was rendered. There is an exception to this 120-day rule: "If it is made to appear by clear and convincing proof that the defendant was unavoidably prevented from the discovery of the evidence upon which he must rely, such motion shall be filed within seven days from" the day the court grants the motion for leave to file a motion for a new trial. Crim.R. 33(B).

{¶ 8} The Ohio Supreme Court has explained "clear and convincing" proof as follows: "that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt * * *. It does not mean clear and *unequivocal*." (Emphasis sic.) *Cross v. Ledford*, 161 Ohio St. 469, 477, 120 N.E.2d 118 (1954).

{¶ 9} Ohio courts have cited with approval the Tenth District's explanation of "unavoidably prevented": "a party is unavoidably prevented from filing a motion for new trial if the party had no knowledge of the existence of the ground supporting the motion for new trial and could not have learned of the existence of that ground within the time prescribed for filing the motion for new trial in the exercise of reasonable diligence." *State v. Walden*, 19 Ohio App.3d 141, 145-146, 483 N.E.2d

859 (10th Dist.1984). *See also State v. Glover*, 2016-Ohio-2833, 64 N.E.3d 442, ¶ 27 (8th Dist.) (citing *Walden* with approval).

**{¶ 10}** Recently, the Ohio Supreme Court determined that Crim.R. 33(B) "does not establish a time frame in which a defendant must seek leave to file a motion for a new trial based on the discovery of new evidence." *State v. Bethel*, 167 Ohio St.3d 362, 2022-Ohio-783, 192 N.E.3d 470, ¶ 55. *Bethel* rejected the notion that "it was within the trial court's discretion to deny Bethel's motion for leave based on Bethel's failure to file the motion within a reasonable time after discovering" the new evidence. *Id.* at ¶ 58.

**{¶ 11}** Upon review, we find that the trial court erred when it denied Minifee's motion for leave based, in part, on the "wholly unreasonable" delay between "discovering" the new evidence and filing the motion, as well as Minifee's failure to provide "date specific information as to when he actually learned about * * * Gunn's recantation * * *." Under *Bethel* and Crim.R. 33(B), these are not proper reasons to deny a motion for leave to file a motion for new trial.

**{¶ 12}** Comparing Gunn's affidavit to her testimony at Minifee's trial, we find the affidavit presents new evidence. Gunn states the following in her affidavit pertinent to Minifee's argument that he should be granted leave to file a motion for a new trial: Gunn saw the Pierce shooting from her bedroom window. Her house is across the street from where the shooting took place. "My window overlooks the street and I could see across the street. * * * I saw the whole thing." Pierce got out of a car and walked across the street toward a truck. Minifee was "right at the back

of the truck looking at" Pierce. Pierce said, "[Y]ou waiting on me?" Minifee did not

say anything. Pierce pulled out a gun. Pierce "fired his gun. He just started shooting

at [Minifee]. I think he shot three times. I heard more gun shots, I think [Minifee]

might have shot back. I didn't see him. I just saw sparks." Pierce said he was "hit,"

put his gun in "the mailbox," and ran back to his porch.

{¶ 13} Gunn's affidavit states that Pierce "fired that gun first." According to

Gunn, she and Minifee "didn't get along."

> This was not a murder. [Minifee] was just shooting in self defense.
> [Pierce] was shooting at him first. I feel guilty about how I testified. I
> was just so mad at [Minifee] back then. It bothers me, it really bothers
> me real bad that he has done so much time. I know what I saw and I
> know in my heart he didn't want to do that. It bothers me. I know
> [Minifee] didn't murder [Pierce] because I know what I saw. I know
> my testimony at trial wasn't all of what I saw. I had so much anger at
> Minifee back then and it just came out that way. I need to do the right
> thing now and tell what [I] saw. These are the facts.

{¶ 14} Gunn's testimony at Minifee's 2007 bench trial was described as

follows in *Minifee I* regarding what she saw and heard from her second-story

bedroom window:

> [S]he heard a car pull up and then a car door slam. She looked out her
> window again and "heard [Pierce] say * * * you waiting on me." She
> explained that when Pierce said that, he was "headed up the steps" to
> his porch. And then, "the gunshot started, just boom, boom, boom."
> She said the shots came from behind a black truck parked * * * between
> the truck and a red car. She could not see the shooter, but saw a man
> come out from where the shots had come. She watched him walk
> toward East 70th Street and then saw him take his black "hoodie" off.
> When he did, she saw that the man was [Minifee]. She said she could
> see him "real good" under the street light. * * * She did not see Pierce
> shooting a gun.
>
> * * *

On cross-examination, Gunn agreed that she did not tell the police that she saw Minifee shoot Pierce on the night of the murder. When asked why, she said that nobody asked her. She told Pierce's mother three or four days later and then called the police.

*Minifee I* at ¶ 12, 14.

**{¶ 15}** "A witness's recantation of testimony can be newly discovered evidence if the court finds the new testimony credible and if the new testimony would materially affect the outcome of the trial." *State v. Gray*, 8th Dist. Cuyahoga No. 92646, 2010-Ohio-11, ¶ 29. At trial, Gunn testified that Minifee was the sole shooter, and she did not see Pierce fire a gun. In her affidavit, Gunn stated that, not only did Pierce fire a gun, he shot at Minifee before Minifee "might have shot back." Gunn's affidavit amounts to a recantation of her trial testimony, which may be a proper reason to grant a new trial to Minifee should he be granted leave to file his motion.

**{¶ 16}** In following the Crim.R. 33(B) test for granting leave to file a motion for a new trial, the next step in the analysis is to determine whether there is "clear and convincing proof that the defendant was unavoidably prevented from" discovering Gunn's recantation.

**{¶ 17}** In *State v. Alexander*, 11th Dist. Trumbull No. 2011-T-0120, 2012-Ohio-4468, ¶ 18-20, the court provided context for analyzing leave to file a motion for a new trial based on a trial witness's recantation:

The case law has not provided a clear guidance as to what is required of an appellant in order to show unavoidable delay, when the newly discovered evidence is a recantation of trial testimony. Some courts have held that a defendant is entitled to an evidentiary hearing on the

issue of unavoidable delay if the defendant's motion for leave includes documents that "on their face" support the defendant's claim that he was unavoidably prevented from timely discovering the evidence. *State v. McConnell*, 170 Ohio App.3d 800, 2007 Ohio 1181, 869 N.E.2d 77 (2d Dist.2007); *State v. York*, 2d Dist. No. 99-CA-54, 2000 Ohio App. LEXIS 550 (Feb. 8, 2000). In these Second District cases, the appellant presented a recanting affidavit from a trial witness, and the court held that because the affidavit on its face supported a claim of unavoidable delay, the appellant would be entitled to a hearing on the issue of unavoidable delay.

Following these cases, therefore, it would appear that the trial court, before denying the motion for leave to file a delayed motion, should have held a hearing to determine whether there is unavoidable delay in the motion for a new trial filed by an appellant in the position of Mr. Alexander, who presented a recanting affidavit showing the witness decided to recant his testimony beyond the 120-day period. As such, an appellant would have no control over the time when the witness decided to "do the right thing," and thus could not have learned of the existence, even in the exercise of reasonable diligence, [of] the affidavit * * *.

As to what type of evidence is required to show unavoidable delay, at least one court suggested that the appellant should present the following evidence for the trial court's consideration: "when or why the affiants decided to recant their trial testimony, whether appellant played a role in that decision, or whether and at what point appellant learned of their willingness to come forward with the new testimony." [*State v.*] *Peals*, [6th Dist. Lucas No. L-10-1035, 2010-Ohio-5893, ¶] 24.

{¶ 18} *Alexander*, like the vast majority of cases analyzing leave to file a motion for a new trial based on trial witness recantation, was decided prior to *Bethel*, 167 Ohio St.3d 362, 2022-Ohio-783, 192 N.E.3d 470. As explained previously, *Bethel* eliminated the oft-used consideration of whether the motion for leave was filed within a "reasonable time" from the time the defendant "discovered" the new evidence. Therefore, the trial court, as well as this court, should not consider

whether Minifee filed his motion for leave within a "reasonable time" after discovering the new evidence.

{¶ 19} Having established that "reasonable time" after discovery of the new evidence is no longer an appropriate consideration, courts are left with not much to go on regarding witness recantation other than assessing whether the affidavit establishes, on its face, that the defendant was unavoidably prevented from discovering the evidence within 120 days of the verdict. Gunn avers in her affidavit that she "need[s] to do the right thing now * * *"; she "had so much anger at [Minifee] back then * * *"; and she "feel[s] guilty about how [defense counsel] testified." Gunn's affidavit, on its face, shows why she decided to recant in 2021. Nothing suggests that Minifee played any role in Gunn's decision to recant. In fact, in Minifee's motion for leave, his defense counsel stated that Gunn "had contact with [her] on another matter." It is worth noting that Minifee has been incarcerated since this shooting occurred in 2007 and has had limited resources to investigate the possibility that the state's only eyewitness to the shooting — who, incidentally, did not get along with Minifee and was "angry" at him when she testified against him — would one day change her mind.

{¶ 20} Gunn's statements in her affidavit, coupled with the fact the she was subject to cross-examination at Minifee's trial, establish, by clear and convincing proof, that Minifee was unavoidably prevented from "discovering," within 120 days from his trial, that Gunn would recant her testimony.

{¶ 21} Additionally, we are mindful that this case concerns leave to file a motion. It does not concern, at least yet, the merits of whether Minifee is entitled to a new trial. *See, e.g., State v. Tiedjen*, 8th Dist. Cuyahoga No. 106794, 2019-Ohio-2430, ¶ 41 (citations omitted) ("Specifically, the trial court's analysis improperly 'conflates two distinct issues' by resolving the motion for leave based on the merits of whether the appellant is entitled to a new trial rather than addressing the threshold issue of whether appellant was unavoidably prevented from discovering new evidence.'"). The credibility of Gunn's statements does not factor into whether Minifee should be granted leave to file a motion for a new trial, and we leave that question for another day.

{¶ 22} Minifee's first assignment of error is sustained. The remaining assignments of error are rendered moot pursuant to App.R. 12(A)(1)(c).

{¶ 23} Judgment reversed. Case remanded to the trial court to allow Minifee to file a motion for a new trial, upon which the court should conduct a hearing pursuant to Crim.R. 33(A)(6). Also, as noted previously in this opinion, case remanded to the trial court for resentencing.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
LISA B. FORBES, JUDGE

MARY EILEEN KILBANE, P.J., CONCURS;
SEAN C. GALLAGHER, J., DISSENTS (WITH SEPARATE OPINION)

SEAN C. GALLAGHER, J., DISSENTING:

{¶ 24} Application of *Bethel*, 167 Ohio St.3d 362, 2022-Ohio-783, 192 N.E.3d 470, and *State v. Hatton*, 169 Ohio St.3d 446, 2022-Ohio-3991, 205 N.E.3d 513, is creating a bright-line rule that all defendants must be granted leave to file a belated motion for new trial when the defendant is able to present any alleged recantation of trial testimony. The Ohio Supreme Court had an opportunity to provide clarity on reviewing a motion for leave to file a belated motion for new trial but was unable to do so. This bright-line application of *Bethel* and *Hatton* that is developing runs roughshod over how courts have traditionally defined and analyzed newly discovered recantation evidence. Neither *Bethel* nor *Hatton* altered the totality of that analysis. Accordingly, I respectfully dissent. I would affirm the decision of the trial court.

{¶ 25} This case boils down to the fact that Minifee believes his felony-murder conviction, based on the undisputed fact that the death of Pierce occurred as a proximate result of the felonious assault Minifee committed against Pierce, should be called into question because a trial witness now claims that a shootout occurred

after Minifee confronted and threatened Pierce's life at his home. That recanted testimony, even assuming the truth of it, is immaterial to the outcome of trial. Throughout trial, the state conceded that a shootout occurred between Pierce and Minifee after Minifee threatened Pierce's life on at least two occasions immediately preceding the shooting. There is nothing new here, and therefore, the recantation cannot be deemed to be newly discovered evidence that Minifee was "unavoidably prevented" from timely discovering under the applicable standard. *See Gray,* 8th Dist. Cuyahoga No. 92646, 2010-Ohio-11, at ¶ 29, citing *State v. Burke*, 10th Dist. Franklin No. 06AP-686, 2007-Ohio-1810, ¶ 18.

{¶ 26} Further, Minifee presented affidavits attached to his motion for leave that confirmed the jury's verdict including, for the first time against his own interest, direct evidence that he possessed the same caliber weapon that fired the lethal shot. There is no need for further expenditure of judicial resources in this matter.

{¶ 27} The result of this case aptly demonstrates that there is no longer any gatekeeping function with respect to reviewing a motion for leave to file a motion for new trial when that motion involves an alleged recantation of trial testimony. As the majority concludes, the recantation is necessarily newly discovered evidence since the defendant would never be able to present that affidavit until the witness decides to recant. I believe this bright-line rule goes too far and strays from the applicable standards. Under Minifee's theory, leave to file a belated motion for new trial is perfunctory because he was able to muster one affidavit recanting some trial testimony and courts are unable to review the credibility of the affidavit until after

granting leave. Because leave is required before a belated motion for a new trial may be filed, courts must be able to review whether the evidence submitted is even material to the outcome of trial in order to preserve some semblance of discretion with respect to the request for leave. *Gray* at ¶ 29. To conclude otherwise in cases involving alleged recantations renders the motion for leave to file a belated motion for new trial to be a perfunctory act of no importance. Crim.R. 33 requires a convicted offender to seek leave before filing a belated motion for new trial. That leave requirement must have meaning.

{¶ 28} Recantations are not necessarily newly discovered information just because the recantation belatedly occurred. This case is emblematic of this point. Gunn's recantation in this case is best defined as a new twist on old evidence — Minifee was always aware of her perjured testimony and several times tried to prove that point through trial and postconviction proceedings. Thus, although Gunn's recantation is newly available, the subject matter of the recantation is not newly discovered evidence. Generally, under Crim.R. 33, just because a defendant is finally able to prove something over time, does not make that proof newly discovered evidence per se, solely because of when it was obtained. *State v. Lenard*, 8th Dist. Cuyahoga Nos. 112283 and 112966, 2023-Ohio-4529, ¶ 13, citing *State v. Jackson*, 8th Dist. Cuyahoga No. 108241, 2019-Ohio-4893, ¶ 20, and *State v. Cashin*, 10th Dist. Franklin No. 17AP-338, 2017-Ohio-9289. Although some recantations will truly be considered newly discovered evidence, as defined as evidence materially

affecting the outcome of trial, courts cannot create a bright-line rule establishing that all recantations necessarily meet that standard.

{¶ 29} Under Crim.R. 33, "[t]he sole question before the trial court when considering whether to grant leave is whether the defendant has established by clear and convincing proof that he was unavoidably prevented from discovering the evidence on which he seeks to base the motion for a new trial." *Hatton,* 169 Ohio St.3d 446, 2022-Ohio-3991, 205 N.E.3d 513, at ¶ 30, citing *Bethel* 167 Ohio St.3d 362, 2022-Ohio-783, 192 N.E.3d 470, at ¶ 41. The weight, or credibility, of the evidence presented can only be considered in resolving the motion for new trial itself. *Id.* Thus, a motion for leave must demonstrate two things: (1) that the defendant has obtained what constitutes newly discovered evidence; and (2) that he was "unavoidably prevented" from timely discovering that evidence. Minifee has not demonstrated either factor.

### A. Facts

{¶ 30} The facts were thoroughly presented in Minifee's direct appeal, *Minifee I* at ¶ 4-31. It suffices for the purposes of this postconviction proceeding that Minifee and Pierce were involved in a day-long, ongoing feud regarding Minifee's belief that Pierce owed $200 for drugs Pierce had taken. Various witnesses heard the two arguing around Pierce's home throughout the day. At one point, the two were on Pierce's porch and Minifee brandished a firearm and threatened Pierce: "I'm not playing with you, man, I'm going to kill you. I want my money or my shit." *Id.* at ¶ 11. That incident was deescalated by Pierce leaving. Evidently, Minifee

remained at Pierce's home. Importantly for the current procedural posture of this case, Dennis White was present and confirmed that series of events.

{¶ 31} Gunn lived across the street. She too witnessed the argument escalating between Minifee and Pierce throughout the day, including Minifee's threat on Pierce's porch. A while later, Gunn heard a car pull up, and she heard Pierce say, "[Y]ou punk mother-fu***, you waiting on me." She explained that when Pierce said that, he was "headed up the steps" to his porch. And then, "the gunshot[s] started, just boom, boom, boom." She said the shots came from behind a black truck parked on Quimby Avenue between the truck and a red car. She could not see the shooter but saw a man come out from where the shots had come. She watched him walk toward East 70th Street and then saw him take his black "hoodie" off. When he did, she saw that the man was Minifee, also known as "Cheezy." She said she could see him "real good" under the street light. Gunn said he was wearing a black "hoodie" with white "stripes or something" on it. She did not see Pierce shooting a gun. *Id*. at ¶ 12.

{¶ 32} Upon cross-examination, Gunn confirmed that she never saw Pierce with a weapon. Gunn did not mention to anyone that her son, Dameian Webber, may have been present, but she told the jury he was her son. In her testimony, Gunn testified extensively to her history and relationship with Minifee, including an incident in which she was convicted for shooting at Minifee. Gunn's alleged perjury regarding Pierce's possession of a firearm formed the basis of Minifee's 2008

petition for postconviction relief based on a statement from Webber in a 2008 affidavit. That petition was overruled.

{¶ 33} Nevertheless, there was evidence of a shootout between Pierce and Minifee, as the state even conceded during its closing argument at trial. According to the state, it did not matter whether Pierce fired the first shots or not; the altercation was created by Minifee threatening Pierce's life, and Pierce died as a result of that altercation.

{¶ 34} The evidence at trial also supported the state's trial theory that a shootout occurred. The red car near where Minifee was located according to trial testimony had bullet defects in the front, driver-side tire. That location was where Gunn saw what appeared to be shots being fired toward Pierce's home by someone she later identified as Minifee. Police officers recovered several 9 mm shell casings ejected from a semiautomatic handgun around the home, but Pierce was shot with a .38- or .357-caliber handgun, which is typically a revolver and does not automatically expel the shell casings after the weapon is discharged. Pierce was shot in the leg while standing on the steps of his porch, with the bullet entering his thigh in an upward trajectory according to the coroner's testimony. That in part corroborated Gunn's trial testimony to seeing Pierce being shot as he stood on the top step of the stairs to his porch and matched blood stains photographed after the fact. After being shot, Pierce pounded on the front door and his girlfriend dragged him inside, where he died from blood loss. The bullet pierced his femoral artery.

{¶ 35} Forensic testing, introduced at trial, indicated that Pierce had gunshot residue on his left hand, but there were no metallic deposits consistent with his actually holding a firearm. It is unclear whether Pierce is left- or right-handed.

{¶ 36} Shahid Saifullah, who had known Minifee for years, spoke with him while both were incarcerated. His testimony was that

> he saw Minifee in the "holding area." He said they talked for about one-and-a-half hours. Saifullah asked Minifee what happened. He said that Minifee told him that Pierce shot at him first. According to Saifullah, Minifee also told him that he would not have shot at Pierce if Pierce had not shot at him. Minifee further explained to Saifullah that he had left some crack cocaine in an abandoned house across the street from Pierce's house. Minifee said he left for a short time; when he came back, the drugs were gone. A girl in the neighborhood told Minifee that she had bought crack cocaine from Pierce. Minifee saw the girl's crack cocaine and identified it as the drugs he had left in the abandoned house. Minifee then went to Pierce and demanded that Pierce give him the "stuff" or $200.

> On cross-examination, Saifullah said that the "first information on the street" was that "four guys with black hoodies came from behind the house, and attempted to rob [Pierce]." Saifullah stated that he heard at least 25 shots.

*Minifee I* at ¶ 25-26.

{¶ 37} In his motion for leave to file a belated motion for new trial, Minifee presented three affidavits.

{¶ 38} In the first affidavit, Webber, who is Gunn's son, claims to have been on Gunn's front porch when the shooting occurred. In his affidavit, Webber claims to have seen Pierce "hop out of the car and ask [Minifee] 'are you looking for me' or 'are you waiting on me,' something like that. I heard like four gunshots, pop pop

pop pop.  I saw the gun in [Pierce's] hands, he was shooting toward [Minifee]."
Webber claims Minifee never fired or possessed a weapon.

{¶ 39} In the second affidavit, White, who was present and witnessed Minifee threaten Pierce with a handgun on the porch, claims the events unfolded quite differently.  According to White, Pierce jumped out of the car, pulled a handgun from his waistband, and proceeded to shoot himself in the groin or leg, which remarkably differs from the coroner's testimony regarding the bullet's upward trajectory and the blood evidence found at the crime scene indicating that Pierce was shot on the steps while ascending the stairs as Gunn testified.  Pierce, according to White, climbed onto the porch, fired his weapon, went inside, and then stepped outside once again to discharge "like three more shots."  Pierce then went into the living room and collapsed.  White claims that Pierce was internally bleeding into his stomach, which became distended — a curious statement in light of the coroner's testimony establishing that the bullet traveled through Pierce's upper thigh coming to rest in his buttocks.

{¶ 40} Confusingly, from Minifee's current perspective, White then averred that "I know Brandon [(Minifee)] didn't murder him [(Pierce)].  The man shot himself.  Brandon [(Minifee)] had a .357 Dude [sic] had a 9 mm." (Emphasis added.)  White seemingly confirms that Minifee had the same caliber weapon that caused Pierce's death on the night of the shooting, a fact of consequence the state was unable to provide direct evidence of at trial.

{¶ 41} And finally, Minifee presented an affidavit from Gunn, in which she purportedly admitted to providing perjured testimony at Minifee's trial. Her affidavit largely tracked the trial evidence about seeing shots fired from the area that Minifee was standing (which coupled with White's affidavit seems to confirm the facts to support the felony-murder conviction), but she now claims that she saw Pierce with a firearm and shooting at Minifee after getting out of the car, in direct contradiction of her unambiguous trial testimony to the contrary. She also claims Minifee shot back, but she did not see him actually firing the weapon (a statement that reflects her trial testimony that she never saw Minifee shooting, only that she saw sparks from the area where Minifee was located during the shooting). She also now claims that Pierce was shot after getting out of the car, which was near the street according to the trial evidence, and ran back to the porch (instead of being shot on the top step while ascending the steps as her trial and other testimony unequivocally established). And finally, she confirms that Minifee did indeed shoot Pierce.

{¶ 42} Gunn claims she only testified that Pierce did not have or shoot a firearm because she "was just so mad at [Minifee] back then." She came forward because of remorse, but she now claims, "I know what I saw and I know in my heart he didn't want to do that. I know [Minifee] didn't murder [Pierce] because I know what I saw." Her statement as to knowing Minifee did not murder Pierce is not relevant to the felony-murder charge. Minifee was convicted of causing the death of Pierce as a proximate result of Minifee committing a felonious assault.

## B. Newly Discovered Evidence Analysis

{¶ 43} As has been the standard for decades, a defendant is "unavoidably prevented" from filing a motion for new trial if he can demonstrate that he "'had *no* knowledge of the existence of the ground' supporting the new-trial motion and could not have learned of the existence of that ground within the time prescribed for filing a new-trial motion." (Emphasis sic.) *Lenard*, 8th Dist. Cuyahoga Nos. 112283 and 112966, 2023-Ohio-4529, at ¶ 10, quoting *State v. Conner*, 8th Dist. Cuyahoga No. 103092, 2016-Ohio-301, ¶ 21; *Walden*, 19 Ohio App.3d at 145-146, 483 N.E.2d 859. Under binding black-letter law, "[a] defendant cannot claim that evidence was undiscoverable merely because the defendant or his defense counsel did not undertake to obtain the evidence sooner." *Id.*, citing *Jackson*, 8th Dist. Cuyahoga No. 108241, 2019-Ohio-4893, at ¶ 20, citing *Cashin*, 10th Dist. Franklin No. 17AP-338, 2017-Ohio-9289.

{¶ 44} This analysis applies equally to recanting witnesses. A defendant may not claim that evidence was undiscoverable simply because an affidavit recanting testimony was not obtained sooner. *State v. Miller*, 8th Dist. Cuyahoga No. 110571, 2022-Ohio-378, ¶ 14, ("*Miller I* ") *aff'd, State v. Miller*, Slip Opinion No. 2023-Ohio-3448, ¶ 1 ("*Miller II*"), citing *State v. Fortson*, 8th Dist. Cuyahoga No. 82545, 2003-Ohio-5387, ¶ 11; *see also State v. Houston*, 8th Dist. Cuyahoga No. 112689, 2023-Ohio-3888, ¶ 20 (concluding that the newly discovered disciplinary history of a nontestifying witness was not material to the defense, and therefore, the trial court did not err by denying the defendant leave to file a motion for new trial). Although

the Ohio Supreme Court accepted *Miller I* for review, the court was unable to muster a majority vote to reverse the appellate decision. *Miller II* at ¶ 1 ("In the absence of four votes to reverse the judgment of the Eighth District Court of Appeals, that judgment is affirmed."). *Miller II* presented a missed opportunity to present some clarity in this area, but *Miller* nonetheless remains the law of this district.

{¶ 45} Before *Bethel* and *Hatton*, courts considered a witness's recantation as newly discovered evidence "if the court finds the new testimony credible and if the new testimony would materially affect the outcome of the trial." *Gray*, 8th Dist. Cuyahoga No. 92646, 2010-Ohio-11, at ¶ 29, citing *Burke*, 10th Dist. Franklin No. 06AP-686, 2007-Ohio-1810, at ¶ 18. However, under *Bethel* and *Hatton*, courts may no longer assess the credibility of the evidence a defendant proffers within his motion for leave. Thus, under that standard as altered by *Bethel* and *Hatton*, a witness's recantation may be deemed to be newly discovered if the testimony would materially affect the outcome of trial. *See id.* Neither *Bethel* nor *Hatton* overruled the totality of the existing standard of reviewing alleged recantations under the newly discovered evidence inquiry. Although those cases eliminated the credibility review from the newly discovered evidence inquiry, *Bethel* and *Hatton* did not impact the preexisting standard that for a recantation to be considered newly discovered, the recantation must materially affect the outcome of trial.

{¶ 46} Under that remaining analysis, the trial court correctly determined that Gunn's recanted testimony is not material to the outcome at trial. The state conceded to the jury that a shootout occurred. The entire theory of the case was that

Minifee threatened Pierce's life causing the shootout in which Pierce was fatally wounded. Gunn's recantation does not change or impact that theory. Gunn's recent recantation demonstrating what was already proven at trial cannot be deemed newly discovered evidence.

### C. "Unavoidably Prevented" Analysis

{¶ 47} In addition, to prove the existence of newly discovered evidence, the defendant must demonstrate that he was "unavoidably prevented" from timely discovering the recantation. In this case, Minifee was acutely aware that Gunn perjured herself at trial. He unsuccessfully attempted to prove that point in a petition for postconviction relief. Tellingly, the majority does not consider the state's claim with respect to res judicata, again highlighting the perfunctory nature of a motion for leave when a defendant proffers a witness's purported recantation. As it has long been held, "'[t]he phrases "unavoidably prevented" and "clear and convincing proof" do not allow one to claim that evidence was undiscoverable simply because affidavits were not obtained sooner.'" *Lenard*, 8th Dist. Cuyahoga Nos. 112283 and 112966, 2023-Ohio-4529, at ¶ 13, citing *Fortson*, 8th Dist. Cuyahoga No. 82545, 2003-Ohio-5387, at ¶ 11. Permitting defendants to continually challenge trial testimony in this fashion provides no finality to the proceeding.

{¶ 48} Regardless, none of the affidavits presented by Minifee demonstrate that he was unavoidably prevented from timely filing his motion for new trial.

{¶ 49} "[A] party is unavoidably prevented from filing a motion for a new trial if the party *had no knowledge of the existence of the ground* supporting the

motion for new trial and could not have learned of the existence of that ground within the time prescribed for filing the motion for new trial in the exercise of reasonable diligence." *Walden*, 19 Ohio App.3d 141, at 146, 483 N.E.2d 859; *State v. Struckman*, 1st Dist. Hamilton No. C-220658, 2023-Ohio-3582, ¶ 8; *State v. Johnson*, 8th Dist. Cuyahoga Nos. 111606 and 111612, 2023-Ohio-808, ¶ 26. Minifee has not demonstrated that he was unavoidably prevented from filing a motion for new trial based on the affidavits presented with his motion for leave.

{¶ 50} As the trial court concluded in this case, Minifee himself was aware of White's presence on the porch when Minifee threatened Pierce's life while displaying his handgun and should have been aware of his presence if White witnessed the shooting given their relationship. Minifee has not explained how he was unavoidably prevented from timely seeking testimony from White to demonstrate the prosecutor's trial concession that a shootout occurred between Minifee and Pierce when Minifee was aware of his presence on the porch. White's affidavit likely explains that omission — White confirmed that Minifee possessed a .357-caliber handgun, the same caliber weapon that caused Pierce's death.

{¶ 51} With respect to Webber's newest affidavit, he had previously submitted an affidavit alleging the same allegations attached to Minifee's 2008 petition for postconviction relief; Minifee has not explained how he was unaware of Webber's potential testimony either. He simply presumes that he was unavoidably prevented from obtaining the new-found evidence because Webber did not come forward sooner. That is facially deficient. App.R. 16(A)(7). Demonstrating that a

defendant was unavoidably prevented from filing a timely motion for new trial "'requires more than a mere allegation that a defendant has been unavoidably prevented from discovering the evidence he seeks to introduce as support for a new trial.'" *State v. Lee*, 10th Dist. Franklin No. 05AP-229, 2005-Ohio-6374, ¶ 9, quoting *State v. Mathis*, 134 Ohio App.3d 77, 79, 730 N.E.2d 410 (1st Dist.1999). A defendant, in pursuing leave to file a motion for new trial, bears the burden of demonstrating that he was unavoidably prevented from timely obtaining the information. A conclusory statement to that effect is not sufficient.

{¶ 52} And finally, the fact that Gunn now admits to perjuring herself during Minifee's trial is not considered newly discovered evidence per se as Minifee's sole argument contends. Minifee, through counsel, extensively cross-examined Gunn regarding her relationship with Minifee, including her assault years earlier, and asked several times whether Gunn saw Pierce with a firearm based on Minifee's personal knowledge of the events as they unfolded. "Generally, newly discovered evidence that purportedly recants testimony given at trial is 'looked upon with the utmost caution.'" *State v. Nunez*, 8th Dist. Cuyahoga No. 104917, 2017-Ohio-5581, ¶ 35, quoting *State v. Nash*, 8th Dist. Cuyahoga No. 87635, 2006-Ohio-5925, ¶ 10. An affidavit from a recanting witness testimony is "'viewed with extreme suspicion because the witness, by making contradictory statements, either lied at trial, or in the current testimony, or both times.'" *Id.*, quoting *Gray*, 8th Dist. Cuyahoga No. 92646, 2010-Ohio-11, at ¶ 29. "A witness's recantation of testimony can be newly discovered evidence if the court finds the new testimony credible and if the

new testimony would materially affect the outcome of the trial." *State v. Woodward*, 10th Dist. Franklin No. 08AP-1015, 2009-Ohio-4213, ¶ 20, citing *Burke*, 10th Dist. Franklin No. 06AP-686, 2007-Ohio-1810, at ¶ 18.

{¶ 53} As briefly discussed before, under *Bethel* and *Hatton,* courts must set aside Gunn's credibility issues with respect to her recantation. *State v. Blanton*, 171 Ohio St.3d 19, 2022-Ohio-3985, 215 N.E.3d 467, ¶ 98 (the credibility of affidavits is not an issue to be resolved in postconviction proceedings); *but see State v. Calhoun*, 86 Ohio St.3d 279, 292, 714 N.E.2d 905 (1999) (the credibility of affidavits presented in support of postconviction proceedings may be determined if the affidavits appear frivolous on their face). Minifee, however, has not demonstrated that he was unavoidably prevented from obtaining evidence proving Gunn's perjury within the stated period within which to file a timely motion for new trial.

{¶ 54} Minifee's sole claim is that Gunn did not recant until now, and that should not be held against Minifee. As the Tenth District has explained, "'[I]f a defendant is aware of the evidence at the time of trial, then it is not newly discovered evidence under Rule 33.'" *State v. Ambartsoumov*, 10th Dist. Franklin Nos. 12AP-878, 12AP-877, 2013-Ohio-3011, ¶ 23, quoting *United States v. Sims*, 72 Fed.Appx. 249, 252 (6th Cir.2003). In situations in which "'a witness who has indicated to the defendant * * * an unwillingness to testify truthfully at trial * * * but later supplies an affidavit exonerating the defendant of the offense, the affidavit is merely newly *available* evidence, but it is not newly *discovered* evidence.'" (Emphasis sic.) *Id.*, quoting *Sims*; *see also State v. Sawyer*, 8th Dist. Cuyahoga

No. 84487, 2004-Ohio-6911, ¶ 14, fn. 4. As Minifee has aptly demonstrated, White was present on the day of the shooting and could confirm his theory that a shootout occurred to further demonstrate Gunn's perjury to the jury (if even necessary since the state conceded that point at trial), but Minifee failed to exercise diligence in obtaining White's testimony. Although Gunn's recantation is recent, her alleged fabrication and the underlying fact of consequence regarding Pierce's possession of a firearm was known to Minifee at the time of trial and at the time of filing his petition for postconviction relief. The trial court did not err in concluding that Minifee was not prevented from presenting that evidence at trial.

{¶ 55} Generally, the fact that an offender can prove something is not to say that he was unavoidably prevented from discovering the information timely.

{¶ 56} Minifee, throughout the trial and the 2008 postconviction proceedings, has maintained that Gunn perjured herself by testifying that she did not see Pierce fire a weapon at Minifee. This evidence is not new to Minifee; he was aware of whether he was shot at or not — and in fact the state conceded at trial that a shootout occurred and that Pierce may have shot at Minifee. Without more than Minifee's conclusory statement that he was unavoidably prevented from obtaining Gunn's affidavit within 14 days of his trial, it cannot be concluded that the trial court abused its discretion in denying leave. As this court has continually defined the phrase "unavoidably prevented," Minifee cannot demonstrate the lack of knowledge of the existence of Gunn's testimony that demonstrated what the state argued was

true at trial: Pierce had a weapon and a shootout occurred. *Johnson*, 8th Dist. Cuyahoga Nos. 111606 and 111612, 2023-Ohio-808, at ¶ 26.

{¶ 57} Minifee is asking for a bright-line rule that providing any evidence from a recanting witness would warrant leave to file a motion for new trial and that a trial court must be declared as a matter of law. I cannot join the majority's acceptance of that proposition. And further, Minifee cannot demonstrate that Gunn's recantation was material to the outcome of trial as required under *Gray*, 8th Dist. Cuyahoga No. 92646, 2010-Ohio-11, at ¶ 29. *Id.*, citing *Burke*, 10th Dist. Franklin No. 06AP-686, 2007-Ohio-1810, at ¶ 18. This case reaches the same issues that the Ohio Supreme Court was unable to clarify in *Miller II*, demonstrating a lack of clarity with respect to Crim.R. 33 and alleged recantations. In this vacuum, the majority pushed this district over the edge of creating a bright-line rule that all motions for leave under Crim.R. 33 must be granted if the convicted offender is able to muster any affidavit from a recanting witness, no matter the materiality of that recantation.

{¶ 58} It is from that conclusion that I respectfully dissent.